### In re THIRD AVE. IN THE CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 16, 1911.)

1. DEDICATION (§ 20*) — WIDENING STREETS — PARTICIPATION BY PROPERTY OWNERS.

Where owners of land sought to be taken to widen a street did not participate in proceedings under which the line of the street was physically changed, there was no dedication of the land required for such purpose sufficient to preclude the owners from recovering damages for the amount taken.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 20–30; Dec. Dig. § 20.*]

2. EMINENT DOMAIN (§ 126*)—ELEVATED RAILROAD RIGHT OF WAY—DEED— CONSTRUCTION.

Prior to the taking of a triangular piece of land to widen a street, the owners executed an instrument to an elevated railroad company providing that in consideration of $6,000 they granted to the railroad company the right to construct its proposed road and to maintain and operate the same. with such columns and supports as were necessary and as shown by a diagram attached to the instrument, across the parcel shown in the diagram and described, etc.; the railroad to remain at an elevation of not less than 14 feet above grade, and the railroad company agreeing not to place any obstacles on the surface except the columns or supports. The attached map showed a triangle, having one elevated pillar located 7 feet 8⅝ inches in from the apex. *Held*, that by such deed the railroad company acquired a mere right of way in the air. with the right to maintain one elevated pillar on the property, the grantors retaining the right to build to the height of 14 feet under the railroad, so that. on the land being taken by the city for street purposes, damages should be awarded on the theory of value based on the owners' right to use the land for all purposes not inconsistent with the railroad company's aërial right of way.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345– 347; Dec. Dig. § 126.*]

Appeal from Special Term, New York County.

Application by the City of New York to acquire title to certain property for the widening of Third avenue opposite East 159th street in the Twenty-Third ward, borough of the Bronx. From an order confirming the supplemental and amended reports of commissioners of estimate and assessment, certain property owners appeal. Reversed, and matter remitted to new commissioners, to be appointed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

William F. Burrogh, for appellants.

Archibald R. Watson, Corp. Counsel (John J. Kearney, of counsel, and Joel J. Squier, on the brief), for the city of New York.

CLARKE, J. February 9, 1906, pursuant to the provisions of section 970 of the charter, the board of estimate and apportionment adopted a resolution for the acquirement of title to the lands and premises required for the widening of Third avenue opposite East 159th street in the borough of the Bronx, described as follows:

"Beginning at a point in the eastern line of Third avenue distant 124.49 feet northerly from the intersection of said line with the north line of East

158th street; (1) thence northerly along the eastern line of Third avenue for 74.92 feet; (2) thence easterly along last-mentioned line for 74.92 feet; (3) thence southwesterly 136.85 feet, to the point of beginning."

The widening of Third avenue is shown on section 6 of the final maps and profiles of the Twenty-Third and Twenty-Fourth wards, filed in the office of the commissioner of street improvements on August 6, 1895. On April 13, 1906, commissioners of estimate and assessment were appointed. Their final report was presented for confirmation on July 31, 1908. The land is in the form of a triangle, having for its base the proposed new easterly line of Third avenue, with its two equilateral sides fronting on the old line of Third avenue, each 74.92 feet in length. The entire parcel contains 2,087.55 square feet, or about four-fifths of a city lot. This is subdivided into four damage parcels, separately owned, containing, respectively: No. 1, 150.69 square feet, or about one-sixteenth of a city lot, for which the commissioners allowed $2,834; No. 2, 1,769.77 square feet, or about three-fifths of a city lot, for which they allowed $32,000; No. 3, 167.09 square feet, or about one-fifteenth of a city lot, for which they allowed $3,940; and No. 4, which contains merely .0003 square feet, for which they allowed $1—making a total of $38,775. This report was refused confirmation; the court saying:

"The awards seem to me to be so grossly excessive that I cannot confirm the report. It must therefore be returned to the commissioners for reconsideration."

And an order was entered thereon October 12, 1908. Thereafter a new commissioner was appointed in the place of one commissioner who resigned, and subsequently another was appointed in the place of a commissioner who died. This commission made a final report, in which it allowed for damage parcel No. 1, $75.35; damage parcel No. 2, $884.89; damage parcel No. 3, $83.55; damage parcel No. 4, $.50—making a total of $1,044.29. This report was confirmed; the court saying:

"In view of the restrictions upon the actual improvement of the property by virtue of the easement existing in favor of the Suburban Rapid Transit Company, * * * the awards are certainly not so low as to suggest an error of principle or a disregard of the evidence as to values."

From the order entered thereon the property owners take this appeal, and attempt to review as well the prior order of the court refusing to confirm the award of the original commissioners.

The enormous discrepancy in the awards made by the two commissions suggests at once the abnormal character of the lands taken in this proceeding. On December 6, 1886, Anna M. Pender and others, the then owners of the property, executed an instrument to the Suburban Rapid Transit Company which recites as follows:

"Whereas, the said party of the second part desires to construct, maintain, and operate its proposed railroad across the premises of the parties of the first part: Now this indenture witnesseth that the said parties of the first part, in consideration of the sum of $6,000 to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, released, and conveyed, and by these presents do

grant, bargain, sell, release, and convey, to said party of the second part, its successors and assigns, forever, the right to construct its proposed railroad, and to maintain and operate the same, with such columns and supports as it may deem necessary or proper for such purposes, and as are shown on the diagram hereto annexed over and across the piece or parcel shown in the said diagram and bounded and described as follows: * * * Such railroad to be and remain at an elevation in all places over and above the parcel of land hereinabove described of not less than 14 feet above the grade as now established of that part of Third avenue which is adjacent to said parcel of land. And the said party of the second part, for itself, its successors, and assigns, covenants and agrees with said parties of the first part, their heirs and assigns, that it will not place any obstruction whatsoever upon the surface of the said parcel of land except the aforesaid columns or supports of its said railroad. And the said parties of the first part, in consideration of the premises, do hereby release said party of the second part, its successors and assigns, from any and all claims and demands for damages, or compensation, or otherwise, which they, the said parties of the first part, or any of them, have or may have as owners of the said premises, or of the lots adjoining the same directly in the rear thereof, by reason of the construction as aforesaid of the proposed railroad of said party of the second part, or of the due and lawful maintenance and operation thereof. * * * "

Attached to the grant was a map on which the land over which the easement was granted is shown as a pink triangle, with a base of 137 feet 2 inches, two equilateral sides of 74 feet 11 inches, containing 2,092 square feet, and having one elevated pillar shown, 7 feet 8⅞ inches in from the apex of said triangle.

In 1889 George Eggers, who was the grantor of the appellant Fuchs, the present owner of damage parcel No. 1, erected on the plot abutting on parcel No. 1 a five-story brick building, the front wall of which coincides with the line of Third avenue as it is legally acquired in this proceeding, and hence diagonal to the old line of Third avenue. In 1904 Eggers, the owner of damage parcel No. 3, erected on the lot which abutted on said No. 3 a two-story brick building, the front wall of which was also coincident with Third avenue as widened in this proceeding, and hence also diagonal to the old line of Third avenue.

By deed dated June 19, 1905, George H. Burns and wife conveyed to Ascher Cohen the entire premises of which damage parcel No. 2 forms a part for the sum of $7,500. By deed of October 18, 1905, the said Cohen and wife conveyed the same premises to the appellant Louis Reiter, who, five days after he took title from Cohen, petitioned the local board to initiate proceedings to have the portion of his land acquired herein condemned for a street. It is this parcel No. 2 for which the first commission awarded $32,000, whereas the whole plot from which it was taken had been purchased for $7,500.

It appears that, shortly after the grant to the railroad, the line of Third avenue was shoved back coincident with the new line and with the description in the right of way, and has been curbed and the street paved, and that it has since been used by the public. There apparently were some negotiations between the railroad and the then commissioners of parks who had jurisdiction in the Twenty-Third and Twenty-Fourth wards, and a resolution was adopted by the board of aldermen; but, of course, those proceedings did not pass title, but accomplished a mere physical change and use. It is claimed that in

1907 actions were brought by property owners against the city for trespass, which are still pending in the Supreme Court.

[1] There is no substance in the claim made by the city of dedication, because the owners of the land did not participate in the proceedings under which the line of the street was physically changed.

[2] The real controversy is over the nature of the extent of the title passed by the Pender deed. The property owners claim three things: First, that the $6,000 consideration was not alone for the easement or right of way, but that there was included therein a release of all possible damages which should accrue from the erection, maintenance, and operation of the road; second, that a mere right of way was granted for a structure which should be always 14 feet high above the property, and that only the one pillar shown on the map accompanying the grant could ever be erected on the property; and, third, that therefore they were entitled to improve their property under said elevated road, and that they could have built stores or offices 14 feet high, five in number, which could have been rented for from $35 to $40 a month, and, as it is in the immediate neighborhood of the new Bronx Courthouse, that such rental easily showed that the property taken in damage parcel 2 was worth $40,000.

On the appointment of the two new members of the commission, the commission began by refusing to consider the testimony already given, saying:

"Then we will have the testimony all over, the same as though none were taken whatever."

Both sides objected and excepted to that ruling. Thereafter one witness was called for the property owners and one for the city, and at the close of the record this entry appears in the minutes:

"The commission overrule all objections entered by the respective parties and have made their awards on all the testimony taken by them before this commission and the preceding one."

Assuming that the owners would have the absolute right to use the strip of land as they pleased under the railroad, the experts for the property owners testified to the amount of damages as follows: Brown, for damage parcel No. 1, $5,289.97; parcel No. 2, $34,890; parcel No. 3, $4,995.88. Jackson, for parcel No. 2, $33,412. Hoadley, for parcel No. 2, $34,344. Cronin, parcel 1, $2,778.45; parcel 2, $26,400; parcel 3, $3,167. The city's witnesses on the assumption that the property could be built on by the owners up to height of 14 feet testified as follows: Berrian, parcel No. 1, $1,680.10; parcel No. 2, $19,615; parcel No. 3, $1,479.31. Davies, parcel No. 1, $300; parcel No. 2, $3,540; parcel No. 3, $334. McHale on the same assumption, parcel No. 1, $188.36; parcel No. 2, $2,760.84; parcel No. 3, $208.86.

On the assumption that the railroad company had not exhausted all its rights, and had an easement over the whole of the strip taken, Berrian testified that the damage to parcel No. 1 was $376.73; parcel No. 2, $4,487.50; parcel No. 3, $334.18. On the same assumption,

Davies, parcel No. 1, $250; parcel No. 2, $2,950; parcel No. 3, $278.18. McHale, parcel No. 1, $25; parcel No. 2, $100; parcel No. 3, $25.

There is no justification for the figures found by the commissioners, even assuming that the property owners by reason of the grant had no right to build upon the land. When we consider that this is an elevated railroad, acquiring a right of way in the air, which attaches a diagram to the grant of such right of way, showing upon the property one elevated pillar, and expressly providing that said elevated road should always be 14 feet above the grade, it is clear that there was left to the owners a beneficial use of such property, and that they could build on it, provided said building did not interfere with the right of way granted.

There is something that might be said in favor of the proposition that the grant did not confine the road to the use of one pillar on the property; but from the nature of the structure and the attaching of the plan I think that this was what was intended. The road acquired a hole in the air; the landowner held his land less that hole. In other words, his general right to build usque ad cœlum had been cut down to 14 feet, but that he still had. Now the city takes all the land, subject to the right of the railroad.

We cannot on this appeal act on the first report of the commissioners. If we could, we are inclined to think the award was excessive. But clearly the present award finds no support in the evidence. While it is true that in such cases commissioners are required to view the property taken, and may exercise their independent judgment, still it is evident, we think, that this award was based upon an erroneous theory.

The order confirming the report of the commissioners is reversed, and the matter remitted to new commissioners to be appointed. All concur.