In the Matter of the Application of the CITY OF NEW YORK, Relative to Acquiring Title, etc., for the Opening of Roosevelt Avenue, from Woodside Avenue to Wateredge Avenue; The Public Place, Bounded by Roosevelt Avenue, Elmhurst Avenue, and Case Street; The Public Place, at the Intersection of Roosevelt Avenue with Louona Avenue; The Triangular Area, Bounded by Roosevelt Avenue, the Easterly Line of Vaux Street, and Woodside Avenue; The Triangular Area, Bounded by Roosevelt Avenue, the Easterly Line of Warner Avenue, and the Southerly Line of Aske Street; Sackett Street, from Roosevelt Avenue to Forty-second Street; and Louona Avenue, Where it Adjoins the Public Place at Roosevelt Avenue, etc., Borough of Queens, City of New York, etc.

QUEENSBORO INVESTING COMPANY and TERMINAL HEIGHTS DEVELOPMENT COMPANY, Appellants; THE CITY OF NEW YORK, Respondent.

Second Department, February 21, 1919.

**Municipal corporations — city of New York — street opening proceeding — dedication of street to public — effect of filing of maps by development companies — implied acceptance — private easements of purchasers — consent to construction of elevated road not a dedication to public use — damages to owner of bed of street after conveyance of abutting lots — application of easement of access — easement of access under contracts of sale not consummated by deed.**

The filing of maps by real estate development companies corresponding to municipal surveys, and the subsequent issue of a development map together with descriptive material merely to acquaint purchasers with the public improvements then being projected or actually determined upon, do not constitute a dedication of streets to the public.

In order to make a complete change of interest there must be both a dedication and an acceptance.

An implied acceptance requires a long user.

Sales made pursuant to the maps aforesaid may give purchasers a private easement, but do not import a public dedication.

Consent to the construction of an elevated road granting a right of support by pillars or columns with an easement for stairways, does not effect a dedication of the land in the street to public use.

Second Department, February, 1919.          [Vol. 186.

An owner of the bed of.a street after his conveyance of the abutting lots
is only entitled to nominal damages upon condemnation for street
purposes.

An easement of access applies merely in the blocks wherein lots are sold.
In other parts of the projected street the owner of the street bed may
be also the owner of the abutting lots and thereby be entitled to a
substantial award.

Sale contracts although not consummated by deed may subject streets
to easements of access in favor of abutting purchasers.

APPEAL by the Queensboro Investing Company and another,
claimants for damages for lots in the bed of a newly-opened
street · in the Elmhurst section of Queens county, from an
order of the Supreme Court, made at the Kings County Special
Term and entered in the office of the clerk of the county of
Queens on the 7th day of March, 1917, denying their motion
for the confirmation of the report of the awards for damage
and returning the same with instructions to award nominal
damages only.

On August 19, 1912, commissioners were appointed whose
report of damage awards was signed on January 26, 1917.
These were confirmed except as to fifteen damage parcels.
The Terminal Heights Development Company (called here
the " Terminal Co.") owned two of these parcels. The other
thirteen were those of the Queensboro Investing Company
(called here the " Queensboro Co."). Separate appeals were
taken but brought here upon a single record.

Both appellants' parcels formed part of the bed of Roosevelt
avenue. But the physical situations differ. Hence these
appeals have to be separately considered.

*The Terminal Co.* This appellant owned damage parcel 112a,
lying in the street bed west of Roumbouts place (Fifteenth
street), and parcel No. 114 (between Roumbouts place and
Sixteenth street).

The city was engaged in making preliminary surveys for
laying out these streets in 1909, when the Terminal Co.
purchased this property. On June 17, 1909, this company
filed with the county clerk a map of its property on which
it delineated Roosevelt avenue. In June, 1911, the board
of estimate approved Queens borough final map 10, which
on February 16, 1912, was officially filed with the borough
president. It corresponded with the map filed by this appel-

lant in 1909, so far as concerned the Roosevelt avenue street lines, and the abutting blocks referred to in these proceedings.

There was also evidence of the issue of maps, booklets and like descriptive matter intended to be distributed among lot buyers. These, however, were claimed merely to depict the coming street improvements already decided upon for these sections of this newly-forming suburb.

On April 30, 1912, this appellant gave a formal consent to an elevated railroad upon Roosevelt avenue.

On January 2, 1913, the city's title vested in these street opening proceedings. Roosevelt avenue, however, was not then physically opened between Worthington avenue and Sixteenth street.

Lot 114 between Fifteenth and Sixteenth streets containing 9,939.4 square feet, received a full award of $3,975.61. The abutting block on the north side of Roosevelt avenue had been indicated on the map filed by appellant as block 8. Before the vesting of the city's title in these proceedings, lots in block 8 abutting on parcel 114 had been sold, but were not actually conveyed till later.

Before such vesting five twenty-foot lots in block 9 at the northeast corner of Worthington avenue and Roosevelt avenue had been conveyed by lot numbers abutting on damage parcel 112a. Being thus diminished in value by such private easements, parcel 112a received an award of only fifty dollars.

*The Queensboro Co.* The thirteen parcels are parts of the bed of Roosevelt avenue from Twentieth street easterly beyond Twenty-sixth street, extending along six city blocks. They are 182a, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193 and 194. This land was part of a large tract acquired by the Queensboro Co. on January 8, 1910. On August 23, 1910, sheet 16, part of the final map of the borough of Queens, which covered this locality, was filed in the county clerk's office, and the following day with the borough president. A year after the Queensboro Co. caused a map of its properties to be filed in the county clerk's office on August 25, 1911, on which it showed Roosevelt avenue and the cross streets, upon which it subdivided the blocks for building lots, on which the lines coincided with the borough official map. Before January 2, 1913 (when the city's title vested in these pro-

Second Department, February, 1919. [Vol. 186.

ceedings), Twenty-third, Twenty-fourth, Twenty-fifth and Twenty-sixth streets were physically opened from Roosevelt avenue north to Jackson avenue; Twenty-fifth and Twenty-sixth streets were also open to the south from Roosevelt avenue; easterly from Twenty-second street some corners had been curbed, with laid sidewalks. Roosevelt avenue roadway had no paving, but the public used it as far west as Twenty-fifth street. It appears, however, that from its condition travel then ended at Twentieth street in a *cul de sac.*

Before January 2, 1913, the Queensboro Investing Company had sold eighteen lots, being five between Twenty-second and Twenty-third streets; five between Twenty-fourth and Twenty-fifth streets; three between Twenty-sixth and Twenty-seventh streets, and five between Twenty-eighth and Twenty-ninth streets.

The Queensboro Co., however, reserved its title in fee to the bed of the street or streets " in front of said premises and intends hereby to grant only a right of way over said street or streets to the grantee herein named."

The damage parcels in the bed of Roosevelt avenue in the blocks in front of the lots conveyed were treated by the commissioners as burdened by the private easements of the abutting lot owners and were the basis of small awards, the largest being two hundred dollars, others of varying size receiving awards of forty-five dollars (parcel 185), sixty dollars (parcel 187, also parcel 189), forty-five dollars (parcel 191, also parcel 193), and sixty-two dollars (parcel 194).

Damage parcels 182a (between Twentieth and Twenty-first streets), 183 (in the bed of Twenty-first street crossing of Roosevelt avenue), 184 (between Twenty-first and Twenty-second streets) and 192 (between Twenty-fifth and Twenty-sixth streets), being away from blocks where lots had been sold, were compensated for at the rate of twenty-five cents a square foot, which seems to have been accepted as a fair market value in that locality.

On the motion for confirmation, the report was returned with a direction that as to lots of both these appellants in the bed of Roosevelt avenue it be revised in accordance with the opinion that only a nominal award should be made for such parts of the street bed, because if not devoted to public

use, they had been so burdened by easements that the owners should recover only six cents.

*Edwin H. Updike* [*William J. Millard* with him on the brief], for the appellants.

*L. Howell LaMotte* [*William P. Burr*, Corporation Counsel, and *Joel J. Squier* with him on the brief], for the respondent.

PUTNAM, J.:

Two questions come up on these appeals. What is a dedication of a street to the public? In the absence of such dedication, how much do private rights of way granted to adjoining lot owners diminish the fee value of the street bed?

As to dedication, this case is quite different from that presented in *Matter of City of New York* [*Decatur Street*] (196 N. Y. 286), where for nineteen years before the proceedings the street had been opened and publicly traveled, water mains laid, with a row of shade trees on either side, and a path between the trees and the side fences, with other marks of dedication. Here the acts relied on to import such dedication are the filing of a map corresponding to the borough surveys; and in case of the Queensboro Co. to issue a later development map following the official borough map. In both cases, such maps, and the descriptive material given out, were merely to acquaint purchasers with the public improvements then being projected, or actually determined upon. On such facts, neither appellant can be regarded as a dedicator of its lands to the public. It cannot be said that there had been any acceptance of Roosevelt avenue by the city. Yet to make complete such a change of interest there must be both a dedication and an acceptance. (*Matter of Hunter*, 163 N. Y. 548.) Even an implied acceptance requires a long user, as VANN, J., says, " for such a length of time that they would be seriously inconvenienced by an interruption of the enjoyment." (*City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397, 402.) In *Flack* v. *Village of Green Island* (122 N. Y. 107) there had been twenty years' public user. Here the damage claimants described the developed property according to the borough system of streets. The borough final map had been filed a year before the Queensboro Investing

Company filed its own map. Sales so made might give such a buyer a private easement (*Matter of City of New York* [*Sedgwick Ave.*], 162 App. Div. 236; *Reis* v. *City of New York*, 188 N. Y. 58, 70; *Matter of One Hundred & Sixteenth St.*, 1 App. Div. 437; *Matter of City of New York* [*Sixty-fourth St.*], 183 id. 708), and do not import a public dedication.

The contention that land in this street was wholly dedicated to public use by consenting to an elevated road, seems unsustained. Such consent grants a right of support by pillars or columns, with an easement for stairways. "The road acquired a hole in the air; the landowner held his land less that hole." (*Matter of City of New York* [*Third Avenue*], 145 App. Div. 244.)

The lots of the Queensboro Co., subjected to easements of access, have received awards apparently based on a scale of fifty cents per running foot.

In some former condemnations, lots burdened by easements of access were the subjects of such an arbitrary scale of values. (*Matter of City of New York* [*Avenue D*], 200 N. Y. 536, 538.) However, only strictly nominal damages are now given to the owner of the bed of a street, after his conveyance of the abutting lots. (*Matter of Schneider*, 136 App. Div. 444; 199 N. Y. 581; *Matter of City of New York* [*Carroll Street*], 137 App. Div. 39; *Matter of Opening Hamilton Street*, 144 id. 702.)

Such easement of access applies merely in the block wherein are the lots sold. In other parts of the projected street the owner of the street bed may be also the owner of the abutting lots. With ownership thus united, the title to the street bed has a substantial value. (*Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438, 446.) Such were the Queensboro Co. damage parcels 182a, 183, 184 and 192, for which have been made substantial awards.

Regarding the Terminal Co. parcel 114, the commissioners erred in regarding it as unburdened by easements of access, since the sale contracts, although not consummated by deed, in effect had subjected the parcel to such an easement in favor of the abutting purchasers. (*Matter of City of New York* [*Edgewater Road*], 138 App. Div. 203; affd., 199 N. Y. 560.)

Hence the order of the Special Term should be modified. Instead of directing nominal awards as to the whole fifteen parcels, the awards as to damage parcels 182a, 183, 184 and 192 should be confirmed. The others, being two for the Terminal Co., and nine to the Queensboro Co., should be the subject of a reduction to nominal awards of six cents, and as thus modified the order of the Special Term should be affirmed, but without costs.

JENKS, P. J., MILLS, RICH, PUTNAM and JAYCOX, JJ., concurred.

Order modified in accordance with opinion, and as so modified affirmed, without costs. Order to be settled before Mr. Justice PUTNAM.