(153 App. Div. 254.)

## HOLDEN v. CROLLY et al.

(Supreme Court, Appellate Division, Second Department. November 15, 1912.)

1. DEEDS (§ 114*)—CONSTRUCTION—DESCRIPTION OF PROPERTY—"MORE OR LESS."

A grantor, whose land was bounded on the east by lands of S., conveyed a part to C., and then conveyed land lying between that conveyed to C. and that owned by S., describing it as "beginning at a point * * * adjoining the land of C., thence running easterly * * * 58 feet to the land of S., * * * all distances above mentioned to be more or less." *Held*, that the conveyance covered all of the land owned by the grantor lying between the lands of S. and C., whether "more or less" than 58 feet wide.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*

For other definitions, see Words and Phrases, vol. 5, pp. 4585–4593.]

2. BOUNDARIES (§ 8*)—CONSTRUCTION—DESCRIPTION OF PROPERTY.

An owner of land conveyed a strip to a railroad, describing its eastern boundary as a line parallel with the center line of the railroad as then staked out and distant easterly therefrom 30 feet. The deed contained a covenant by the grantor to maintain fences on both sides of the strip. Some time thereafter a fence was built east of and nearly adjoining the railroad tracks, but which was in fact about 11 feet east of the true eastern boundary of such strip. The lands adjoining the strip were subsequently conveyed by deeds describing them as bounded on the east by the railroad fence, and there was no evidence that any other fence was intended than the one mentioned. A subsequent owner laid out a proposed street across the land, and contracted to sell to defendant a piece of land described as beginning on the east side of the proposed street and running easterly 55 feet. The deed described it as beginning 122 feet easterly from the easterly line of the railroad, but recited that the easterly line of the proposed street was the westerly line of the lot conveyed. Such owner staked out the proposed street and the lot conveyed; defendant's east line as shown by the stakes being 122 feet east of the fence mentioned. Defendant erected a building on her lot, the east side of which was several feet west of the east line of stakes, but which was east of her east line if the measurements were made from the true boundary line of the railroad, instead of from the fence in question. A purchaser of the land lying east of defendant's land assumed that such stakes represented the boundary, and erected a stone wall thereon. *Held* that, defendant having purchased with reference to monuments placed on the land by her grantor to mark out the land to be conveyed, her eastern boundary was a line 122 feet east of the fence, and not, as claimed by her, a line 122 feet east of the true boundary line of the railroad.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 66–76; Dec. Dig. § 8.*]

3. EVIDENCE (§ 460*)—EXTRINSIC EVIDENCE AFFECTING WRITINGS—EXPLANATION OF LANGUAGE USED.

The evidence, tending to show the mutual understanding and conduct of the parties as to the actual location of the boundary lines of such land at the time the deed was delivered, was properly received, since it did not contradict the written instrument, but merely explained language therein contained, not in itself self-explanatory.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

4. QUIETING TITLE (§ 19*)—NATURE AND SCOPE OF REMEDY.

While actions under Code Civ. Proc. § 1638, authorizing the bringing of actions for the determination of claims to real property adverse to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that of plaintiff, are statutory, and can be maintained only under the circumstances specified by the statute, the purpose of the statute was to enlarge and supplement pre-existing equitable remedies, and, where the action can be maintained, equitable rules may be applied to reach a proper determination.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 48; Dec. Dig. § 19.*]

Appeal from Special Term, Westchester County.

Action by S. Hamblen Holden against Theresa Crolly and others. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

C. W. Ticknor, of Mt. Kisco, for appellant.
Jonathan Holden, of Hawthorne, for respondent.

CARR, J. This is an appeal from a judgment in favor of the plaintiff, entered at Special Term in Westchester county in an action brought under section 1638 of the Code of Civil Procedure, to determine a claim to real property situate in the village of Pleasantville, in said county. The defendant Theresa Crolly, who is the only appellant, and the plaintiff, have derived whatever rights they may possess mutually in the land in question from an ultimate common source of title. In February, 1868, Ira Wheeler acquired, by deed, title to a tract of land fronting upon a highway, known formerly as Railroad avenue, but now as Bedford Road. The west boundary of this tract was the "east side of the New York & Harlem Railroad," or "the railroad fence," and the east boundary was at one time the land of Henry Hobby, and later that of Mary Stephens. In 1888 Ira Wheeler conveyed a portion of this tract to the defendant Theresa Crolly by deed with a description as follows:

"Beginning at a point on the southerly side of the road leading from Pleasantville to Sing Sing, and now known as Railroad avenue, one hundred and twenty-two (122) feet easterly from the easterly line of the New York & Harlem Railroad; thence running easterly along said road or avenue, fifty-five (55) feet; thence southerly, at right angles with said road or avenue, one hundred and fifty (150) feet; thence westerly, parallel with said road or avenue, fifty-five feet; thence northerly, at right angles with said road or avenue, one hundred and fifty feet, to the place of beginning—together with a right of way thirty feet wide extending from Railroad avenue southerly to a new street called Clinton street, and the easterly line of such right of way is to be the westerly line of the lot hereby conveyed; such right of way to be a free, open and unobstructed right of way to the party of the second part, and to any and all persons, for the purposes of ingress and egress and passing to and fro from said Railroad avenue to the said new street, known as Clinton street, or to or from any intermediate point on such right of way."

This deed was recorded in April, 1888, and was the first conveyance out of Wheeler of any portion of the original tract. It was found by the trial court, on the request of the defendant Crolly, that, on the execution and delivery of the foregoing deed, the said defendant entered into possession of the land described therein, and con-

tinued in possession for more than 20 years prior to the beginning of this action. This finding is based upon indisputable evidence; Mrs. Crolly having built a department store on the land in 1888, and having occupied it ever since the construction of the building. In July, 1890, Wheeler conveyed another portion of his original tract to Jennie I. Lane, who in turn conveyed to her husband, Winfield Lane. The deed to Mrs. Lane contained a description as follows:

"Beginning at a point on the southerly side of the road leading from Pleasantville to Sing Sing, and known as Railroad avenue, adjoining the land of Theresa Crolly; thence running easterly along said road fifty-eight feet, to the land of Mary Stephens; thence southerly along the land of said Stephens one hundred and ninety-two feet, to the land of Geo. H. Wheeler; thence westerly along said Wheeler land seventy-five feet, to a right of way; thence northerly along said right of way twenty-eight feet, to the land of Theresa Crolly; thence easterly along said Crolly's land fifty-five feet; thence northerly along said Crolly's land one hundred and fifty feet, to the place of beginning—all distances above mentioned to be more or less."

Mr. Lane is not a party to this action, but was examined as a witness at the trial, and made no claim in hostility to the plaintiff.

[1] The description in the deed of Wheeler to Mrs. Lane necessarily implied a reference, as an integral consideration, to the deed from Wheeler to Mrs. Crolly, for the westerly line of the Lane lot was necessarily the easterly line of the Crolly lot. While the deed to Lane called for a lot fronting on the highway 58 feet, yet, as the deed declared "all distances above mentioned to be more or less," it is clear that all the land of Wheeler fronting on the highway east of the easterly line of Crolly's lot was conveyed to Lane by that part of the description which carried the Lane lot from the easterly Crolly line easterly "to the land of Mary Stephens," whether the actual distance along the highway was more or less than 58 feet; and the learned trial court has so found at the request of the defendant Crolly. After the deed to Lane, Wheeler died, and his successors in interest conveyed the remainder of this original tract located west of the 30-foot right of way, and the plaintiff in this action has acquired title to a portion of said remainder by a deed which fixed her easterly boundary on the west line of "Wheeler avenue." It is conceded that "Wheeler avenue," referred to in plaintiff's deed, is the 30-foot right of way referred to in the deed of Wheeler to Crolly, where it was declared that "the easterly line of such right of way is to be the westerly line" of the Crolly lot.

[2] In the deed from Wheeler to Crolly, as before stated, the westerly line of the Crolly lot was located "one hundred and twenty-two (122) feet easterly from the easterly line of the New York & Harlem Railroad." Ordinarily this would seem a sufficiently definite location, easily determinable by the location of the easterly line of the railroad. However, it is the essence of the plaintiff's contention in this controversy that the words "easterly line of the New York & Harlem Railroad," as used in the deed from Wheeler to Crolly, were intended mutually to mean a point in the center of a stone wall which ran along the crest of a bank near and parallel to the railroad tracks, which wall Wheeler, the grantor, had understood to be on the

"easterly line" of the railroad in question when he used said language in his deed to Crolly.

In 1845 the land now in question formed a part of a farm owned by one Henry Hobby. In that year Hobby made a deed to the railroad company of a strip of land through his farm 70 feet wide and 2,587 feet long, running through the farm—

"as now laid out and located through the said farm as part of the route for the extension of the New York & Harlem Railroad between White Plains and Somers, in the county of Westchester, bounded northerly by land of Henry Romer, southerly by land of John Foster, easterly by a line running parallel with the center line of said railroad as now staked out through said farm, and distant easterly therefrom thirty feet, and westerly by a line running parallel with said center line and distant westerly therefrom forty feet."

This deed likewise contained a covenant that the grantors, their heirs and assigns, should—

"at all times make and forever maintain good and sufficient fences on both sides of the strip or piece of land hereinbefore described."

At what time Hobby, in pursuance of said covenant, made fences on the sides of the strip conveyed to the railroad company, does not appear; but that some fence was made on the easterly line, presumably by him, between 1845 and 1853, is evident from the fact that in the latter year Hobby made a deed to one Mabee of a part of his farm fronting on the highway and east of and adjoining the railroad land, and by said deed described the property they conveyed as bounded "to" and "along the railroad fence." In fact, the description in this deed expressly made "the railroad fence" the westerly boundary of the land thereby conveyed, for the description therein identifies the "railroad fence" and the east line of the land of the railroad as being coincident. This description is in language as follows:

"All that certain piece or parcel of land, lying and being in the town of Mt. Pleasant, county and state aforesaid, bounded as follows: Beginning at the northwest corner of said piece, adjoining the land of the Harlem Railroad; running thence easterly one hundred and eighty feet, or to the center of the second and third row of Doureny apple trees along the highway leading from Sing Sing to Pleasantville; thence southerly in center of said rows of trees one hundred and eighty-four feet to the stone wall; thence westerly one hundred and fifty and a half feet along the stone wall *to the railroad fence; thence northerly along the railroad fence one hundred fifty and a half feet to the place of beginning.*" (Italics ours.)

This deed likewise contained a covenant that the grantee (Mabee) was "to make the east fence and to maintain this and the railroad fence." In 1854 Mabee acquired by deed from Hobby an additional piece of land fronting on the highway and immediately east of the land conveyed to him in 1853. Both of these pieces were conveyed subsequently to one Hyatt in 1868, who in the same year conveyed them to Ira Wheeler. In the deeds from Mabee to Hyatt and from Hyatt to Wheeler the words "railroad fence" are used to describe one of the boundaries of the land granted therein, just as they were used in the deed from Hobby to Mabee. It is agreed, as it must be, that Wheeler acquired through Hyatt that which Mabee had acquired

from Hobby, and the express recitals in the various deeds in question establish this to be the fact beyond possible controversy.

It appears that for a great number of years a stone wall ran along the crest of the bank, east of and nearly adjoining the railroad tracks, and that no other fence had ever existed between the railroad and the land adjoining it easterly. From this fact it is argued that it is a fair inference that the stone wall and the "railroad fence" referred to in the deeds hereinbefore specified were in fact identical. There is no evidence in this record which in any way rebuts such inference. This being so, then the stone wall in question was the westerly boundary of the lands conveyed by Hobby to Mabee, and which were afterwards acquired through mesne conveyances by Wheeler. The latter held the property so acquired for 20 years before making any conveyances, and during all of this time it was his understanding that this stone wall marked, not only the westerly boundary of his property, but the easterly line of the railroad as well. For many years the railroad company was in apparent possession of parts of the land lying westerly of this wall. As this land fronted on the highway in 1888, it was inclosed by another stone wall running along the southerly line of the highway, then known as Railroad avenue and now known as Bedford Road. The northerly line of the highway was intersected, opposite Wheeler's property, by a street known as Wheeler avenue.

Through his son, acting as his agent, he set about to sell some portion of this land. It was his idea to open a public right of way southerly through his land to a new street, known as Clinton street, and which should be 30 feet in width and opposite to and a continuation of Wheeler avenue as already existing, as it intersected the northerly side of Railroad avenue. His son caused a break to be made in the stone wall, which ran along Railroad avenue, and staked out the proposed right of way. Thereupon a contract in writing was made between Wheeler and Charles Crolly, the husband of the defendant appellant, whereby Wheeler undertook to convey a piece of land therein described as follows:

"Beginning at a point on Railroad avenue, at the east side of a projected street, which it is hereby agreed shall be a continuation of and opposite Wheeler avenue, and thirty feet or more in width; thence running eastwardly along Railroad avenue fifty-five feet; thence southerly one hundred and fifty feet; thence westwardly fifty-five feet to the line of above-mentioned street; thence northwardly along the line of said street one hundred and fifty feet to the place of beginning—all the angles of above to be ninety degrees."

No other contract was made between Crolly and Wheeler, and the latter was directed subsequently to make out the deed to Mrs. Crolly as grantee. Wheeler's son staked out the lot sold by iron stakes. He furnished the data to Mrs. Crolly's attorney for the drawing of the deed, which was subsequently executed and delivered. Wheeler did not employ in this deed the same form of description as used in the contract. The deed made the beginning point of the description a point on the highway "one hundred and twenty-two feet easterly from the easterly line of the New York & Harlem Railroad"; but it is

apparent that the description in the deed and the contract, though different in words, were intended to express exactly the same thing, for by both instruments the easterly line of the projected street or right of way and the westerly line of the lot granted were referred to as coincident. As before stated, Wheeler had staked out the east and west lines of the right of way and had taken down a part of a wall running along Railroad avenue which lay between the stakes. Wheeler had taken the old stone wall, which ran north and south along the westerly portion of his property, as "the easterly line" of the railroad, and made his measurement of the specified 120 feet from a point in the center of the stone wall. When Mrs. Crolly went into possession, she took down part of the other wall along Railroad avenue, as it ran along easterly for 55 feet, up to a stake which had been set by Wheeler. She caused a store building to be constructed thereon, the easterly side of which building was several feet westerly from the easterly stake set by Wheeler. The fact of the actual location of the building with reference to this stake is of great importance in this controversy, as will appear later.

In 1890 Wheeler conveyed to Lane all the remainder of his property fronting on Railroad avenue east of Crolly's east line. In 1893 Lane started to build on his land, and found an iron stake apparently marking his west and Crolly's east line. This stake remained in the same place until a few weeks before this trial, when it was removed by Mrs. Crolly's husband. Lane considered this stake as marking the boundary line between Crolly's land and his own piece, and he built a stone retaining wall running southerly from Railroad avenue along said line. The present controversy arises from the following circumstance: When Hobby conveyed the strip of land to the railroad in 1845, he made such conveyance with reference to the lines of the railroad as then "laid out," "located," and "staked out" through his farm. It appears without controversy in the case that the easterly line of the railroad as then laid out and located was not in fact coincident with the line of the stone wall, which is assumed to have been the "railroad fence" described in the various deeds, but was a fraction over 11 feet to the west of the line of said wall. If the stone wall or "railroad fence" was to be disregarded as the proper base of the distances set forth in the deed of Wheeler to Crolly, then the lines of the right of way were fixed as much further westerly as the distance between this wall and the east line of the railroad land as actually located in 1845. To this extent Crolly's west line would be moved westerly accordingly as it was intended to be coincident with the east line of the right of way. To the same extent the east line of the plaintiff's property, which was bounded by the westerly side of the right of way should be moved necessarily to the west, thus decreasing the extent of the width of the plaintiff's lot some eight feet or more.

The plaintiff brought this action to secure a determination that it was the intent of the parties to the Wheeler-Crolly deed to make the stone wall or "railroad fence" the base of the measurement of the distances specified in said deed. Mrs. Crolly contends that she had

no knowledge that any other base was intended, except that which should be expressed necessarily by the literal meaning of the words "the easterly line of the New York & Harlem Railroad." She does not pretend that when she took the deed she had any knowledge or information as to the exact location of the railroad line under the Hobby deed of 1845. It is evident, however, that when she took her deed she took it with reference to monuments actually placed on the land by her grantor to mark out visibly the land about to be conveyed to her. If her present contention were to be upheld, it would appear that in 1888, when she built her building upon the land in question, she placed its easterly side some feet beyond her easterly line, thus committing a legal trespass at that time. If, on the contrary, she built with reference to the existing stakes, then the location of her building was wholly within her boundary lines as her grantor and she herself understood them.

[3, 4] We think the learned trial court was right in taking the evidence offered by the plaintiff, which tended to show the mutual understanding and conduct of the parties as to the actual location of the boundary lines at the time the deed was delivered. This evidence did not contradict a written instrument. It merely explained language therein contained, which was not in itself self-explicatory, and in this respect the case at bar is to be distinguished from Muldoon v. Deline, 135 N. Y. 150, 31 N. E. 1091, where the action was in ejectment, and no equitable relief was sought. It is true that the present form of action is statutory, and can be maintained only under the circumstances specified by the statute; but if the action can be maintained under the statute, as we think it can, then equitable rules may be applied to reach a proper determination, for the purpose of the statute was to enlarge and supplement the pre-existing equitable remedies.

The judgment should be affirmed, with costs. All concur.