David Kusnetz, J.
This is an action brought pursuant to article 15 of the Real Property Law to compel the determination of a claim to real property, consisting of a private dwelling located in South Ozone Park, Borough of Queens, City and State of New York and occupied by the defendants, Carl A. Ohsiek and Grace Goodier Ohsiek, his wife. The record title to said property is now in the name of the plaintiff by virtue of recorded deeds of conveyance.
The complaint alleges that the defendants Ohsiek were in default by their failure to pay the $46 monthly installment which became due on February 21, 1954 and on the 21st days of each and every month thereafter up to and including October 21, 1954; that they were also in default by their failure to pay sums “equal to at least one-twelfth of the annual amounts necessary to pay the taxes, water rates, assessments, premiums and cost of insurance” on the premises; that on June 3, 1954 and again on October 8, 1954 they were given written notice of forfeiture of all their rights under a certain installment contract entered into by them on May 25, 1944 with the Home Owners’ Loan Corporation. The complaint demands judgment that the defendants be barred from all claims or interest in the property; *588 that the plaintiff be determined to have a vested, absolute and unencumbered title in fee; that the defendants be adjudged to be statutory tenants of the premises at a rental of $46 per month and be removed from the premises and that the plaintiff be put into possession and recover the sum of $10,000 damages for withholding possession of the property from the plaintiff since June 6,1954.
The answer, in addition to denials of the material allegations of the complaint, sets forth as a complete defense and counterclaim that the defendants are the equitable owners of the premises involved and entitled to legal title under the terms and provisions of the installment contract, by virtue of having paid the requisite 25% of the principal in November, 1947 and that the plaintiff purchased the contract and received his conveyance with full knowledge of the rights and equity of the defendants; that since 1944 the defendants have paid $2,561.88 towards the purchase price of $4,500 and have expended several thousands of dollars for improvements; that there was a balance of $1,939.92 of principal at the time of the commencement of this action; that the purported assignment and conveyance to the plaintiff was made for a consideration of said $1,939.92, plus given amounts for taxes, interest and revenue stamps on deed, amounting in all to $2,024.40; that on September 24, 1954 these defendants duly tendered to the plaintiff a sum in excess of the aggregate amount of past-due installments owing on said contract, and demanded a conveyance of the premises, subject to the provisions of said contract, but that the plaintiff refused and still refuses to convey the premises to defendants ‘ ‘ but on the contrary has required a consideration of $6,000.00 for said conveyance.”
The defendants Ohsiek entered into an installment contract with the then owner of the premises, the Home Owners’ Loan Corporation, on May 25, 1944 to purchase the property which they had occupied as tenants since 1940. The sale price was $4,500, payable $450 on the execution of the contract and the balance in equal monthly installments of $30.98 to be applied first to the payment of interest at the rate of 41/2% per annum on the unpaid principal and the balance on account of principal sums due and payable under the agreement. In addition to all other payments, the purchaser was required to pay in equal monthly installments all charges for taxes, water rates, assessments, fire insurance and other similar charges which made up a total monthly payment of $42.49. Subsequently, and because of the increase in taxes, water charges and insurance, these monthly payments became successively $44 and then $46.
*589 The installment contract provided in paragraph “3rd” that: “When there shall have been paid or applied on account of purchase price in the manner provided, the full sum of eleven hundred twenty-five and 00/100 ($1,125.00) Dollars, in addition to all sums of interest then due and payable to seller pursuant to the terms and provisions of this agreement and if all sums expended by seller shall also have been repaid to seller, and if buyer be not in default hereunder then the purchaser shall be entitled to a conveyance of the premises”.
The records of the Home Owners’ Loan Corporation show that after the defendants’ payment of $168.56 on November 3, 1947 there was a balance of principal due to said corporation of $3,353.66. Thus, as far back as 1947, $1,146.34 had been paid on account of principal. This amount exceeded the $1,125 provided in paragraph “3rd” of the contract for .the conveyance of the property to the defendants. However, no such conveyance was made and the defendants continued making their payments to the Home Owners’ Loan Corporation until February 2, 1950 when the latter assigned the contract to the Dime Savings Bank of Brooklyn, for $2,899.23.
Thereafter the defendants made all payments to the Dime Savings Bank of Brooklyn until the balance of principal was reduced to $1,939.92 as of January 21,1954. The said defendants having failed to pay the monthly installments which became due February through May, 1954 the Dime Savings Bank of Brooklyn wrote them by registered letter, dated June 3, 1954, in which it was stated in part as follows:
“Our records indicate that you are in default under the contract by reason of your failure to pay the monthly installments due February through May amounting to $46.00 each. Accordingly, we hereby give you notice of our election pursuant to the provisions of the contract to declare all your rights thereunder forfeited, and demand is now made upon you for payment of the entire principal balance now due on the contract together with accrued interest thereon.
“We shall expect you to arrange for payment of the full amount due within ten (10) days, in default of which we shall instruct our attorneys to commence proceedings for your removal and any occupants holding under you from the premises and our repossession thereof. At our option, we may dispose of the contract and our title to the property by assignment and sale to another party.”
On June 14,1954, however, the said bank mailed to defendants a mortgage notice listing the aforesaid four unpaid installments of $46 each, aggregating $230 as the ‘‘ Total Amount Due. ’’ On *590 June 25, 1954 the defendants sent a check for the said $230 which the bank claims it returned by letter dated July 2, 1954, which in part stated as follows; “ We are returning your check in the amount of $230.00 as we had informed you in our letter of June 3rd that we had elected to demand from you payment of this account or we would assign it to a private party, You are hereby notified that this account was assigned to Mr. Frank P. Mandel, 1902 E. 22nd St., Brooklyn, New York ”,
The bank’s history sheet shows an entry of June 22, 1954 reading in part, “ I would suggest we offer this one to Mr. Mandel.” The entries from June 23,1954 to June 29,1954 show that a representative of the bank made a telephone call to Mr. Mandel; that one Kramer was given all necessary data and subsequently agreed to take the property. The entry for July 2, 1954 shows that the defendants’ check for $230 was received and returned with the letter above referred to. The entry of July 12, 1954 shows that the sales contract was satisfied on July 7, 1954. The entry of August 20, 1954 is as follows; ‘‘ Mr. O, phoned — claims never get our ltr of j/2 —or cheek — this check has never cleared his bank. Informed him deed assigned to Mandel —- handled by Mr. Kramer, ’’
By letter dated September 30,1954 the defendants sent to the plaintiff a check in the sum of $368 “ covering the installments due on the account assigned * * * by the Dime Savings Bank for the period February 25 to September 25, 1954 with a request that an appointment be made to settle the matter. ’ ’ The receipt of this check was acknowledged by the attorney for the plaintiff by registered letter, dated October 4,1954, which stated in part: ‘ ‘ Please be advised that payment of arrears at this time is not acceptable and I am returning your check herewith.
“ Please take notice that pursuant to the provisions of the contract of sale covering premises 109-43 132 Street, South Ozone Park, made between you and Home Owners ’ Loan Corporation my client has elected and does elect to declare and give you notice that all your rights under the said contract and in and to the said property and the appurtenances thereto are forfeited. You are, therefore, required to remove from the premises forthwith and in the event you fail to do so, I have been authorized to take such action provided by law to remove you therefrom.”
The foregoing facts are not seriously disputed with the exception that the plaintiff claims that the check for $230 originally sent to the Dime Savings Bank of Brooklyn was returned to the defendants and the latter claim that it was not. They contend that their right to a legal title has existed since November, 1947 *591 when they paid more than 25% of principal, and that the installment contract of May 25, 1944 was in effect a conveyance and purchase-money mortgage. The plaintiff on the other hand Contends that the doctrine of equitable conversion does not apply to the facts at bar, first, because by the terms of the installment contract the right to the deed was conditioned not only upon the payment of $1,125 on account of principal but On the further condition that the “ buyer be not in default ” thereunder. He contends that not only were the defendants in default, but that paragraph ‘‘ 12th ” of the agreement provided that, “ Time is of the essence of this agreement and of each and all of the terms, conditions and provisions hereof, and full performance by the purchaser of all of his obligations hereunder is and shall be a condition precedent to the right of the purchaser to a conveyance hereunder, and if default be made and continue for a period Of Thirty (30) days in the payment of any of the installments of principal Or interest hereinbefore stipulated when the same become severally due hereunder, or if default be made in the payment of any other sum herein agreed to be paid to seller by the purchaser, or if default be made in the performance by the purchaser of any other obligation upon the part of the purchaser to be performed hereunder * * * then in either or any of said events, at the option of the seller and Whether or not any such default be thereafter remedied, the whole unpaid balance of said total price and the interest thereon, together with all expenditures theretofore made by the seller pursuant to the provisions of this agreement and the interest thereon and all indebtedness owing hereunder from the purchaser to the seller shall immediately become due and payable, and the seller, at its option, may enforce its rights hereunder, either by forfeiture of all of the purchaser’s rights under this agreement and all interest in the property and the appurtenances as hereinafter provided * * * .”
It is true that from time to time since July, 1945 the defendants did not make their payments on time. This condition continued after the Dime Savings Bank of Brooklyn took over the contract. However, the late payments were accepted throughout both by the original seller and its assignee the Dime Savings Bank of Brooklyn, and there is no proof that prior to that bank’s letter of June 3, 1954 any notice was given to the defendants as purchasers that if they did not pay the balance their contract rights would be terminated. Under these circumstances, the forfeiture clause in the contract was waived. (Cf. De Witt v. Patterson, 282 App. Div. 827.) In Barnett v. Sussman *592 (116 App. Div. 859) the Appellate Division, Second Department, observed, at page 860: ‘‘ The last payment was of $10 in September, 1903. The payments were not according to contract, but irregular as to time and amounts from the beginning, the purchasers being all the time in arrears owing to illness and lack of work. The seller always accepted the payments, however, and thereby so far waived the forfeiture clause that she could not revive it, if at all, except by notice to the purchasers that if they did not pay the balance due within a reasonable time specified such forfeiture would be then exercised ’’.
The plaintiff argues, nevertheless, that his right to a forfeiture was saved by the provisions of paragraphs ‘‘ 12th ’’ and ‘‘ 19th ’’ of the installment agreement. An action such as this, however, is essentially one for a declaratory judgment and is governed by equitable principles. (Knocklong Corp. v. Long Is. State Park Comm., 284 App. Div. 973; Holdens. Crolly, 153 App. Div. 254, 262.) One of such principles is that a court of equity looks to the substance of a contract, which if fulfilled ‘‘ and the general intention of the parties carried into effect, the court relieves against any forfeiture or penalty, inserted for the purpose of enforcing the contract.” (Edgerton v. Peckham, 11 Paige Ch. 352, 358.)
A reading of the entire agreement shows that the purpose of the forfeiture clause was to render unnecessary expensive litigation where less than $1,125 had been paid on account of the purchase price. Once that sum had been paid, the forfeiture clause no longer was in effect. The defendants then became entitled to a deed and the vendor to a mortgage for the balance, and the rights of the parties must now be governed in that light. (Cf. Matter of City of New York [Edgewater Road] 138 App. Div. 203, 206-207, affd. 199 N. Y. 560.) To give the agreement the construction urged by the plaintiff would deprive the defendants of the benefit of a statutory foreclosure sale to which they would have been entitled had the property been conveyed to them when it should have, and the vendor obtained a mortgage to secure the balance of the purchase price as provided in the agreement.
As for the plaintiff’s claim that the provision in paragraph ‘‘ 12th ” — “ whether or not any such default be thereafter remedied ’’ — bars equitable consideration of the defendants ’ rights, it is without merit. In the opinion of the court the quoted language referred to a situation where an attempt is made to remedy defaults without the consent of the seller. Here the seller and its assignee clearly consented to remedy *593 the defaults as they occurred by accepting the payments then in arrears. It would be inequitable to hold that after accepting such payments, and thereby lulling the defendants to make further payments and improvements to the property, the defaults, though remedied, should bar the conveyance of title.
As for the letter of June 3, 1954 which was sent to the defendants by plaintiff’s predecessor, the Dime Savings Bank of Brooklyn, it merely declared the balance of principal to be due and payable and did not purport to divest the defendants of their equitable title to the real property. The plaintiff’s own registered letter to the defendants, dated October 4, 1954 did attempt to invoke a forfeiture, but as already noted the right to do so terminated when the defendants became entitled to a deed.
Judgment will, therefore, be granted dismissing the complaint on the merits. The defendants Ohsiek will have judgment on their counterclaim declaring them to be entitled to a deed in accordance with the provisions of the agreement, dated May 25, 1944, upon their payment to the plaintiff of the balance of principal in the sum of $1,939.92 together with interest thereon from January 21, 1954 plus the amounts incurred in connection with the maintenance and carrying charges of the property together with interest thereon from the date of payment. Settle judgment on five days’ notice.