365 P.2d 664

A. J. MORRIS, Plaintiff-Appellant,

v.

MILLER & SMITH MFG. CO., Inc., Defendant-Appellee.

No. 6911.

Supreme Court of New Mexico.

Oct. 18, 1961.

Nordhaus & Moses, Fred Trechel, Albuquerque, for appellant.

Sutin & Jones, Albuquerque, for appellee.

COMPTON, Chief Justice.

The question presented by this appeal is whether the court erred in granting summary judgment. The pertinent provision of the applicable statute, § 21–1–1(56) (c), 1953 Comp., reads:

> " * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

The plaintiff brought this action to recover judgment for certain sales commissions, and filed a demand for jury trial, after which his deposition was taken by the defendant. After plaintiff's deposition was taken, but before it was filed, defendant moved for summary judgment, alleging that there did not exist a genuine issue as to any material fact. At a hearing upon the motion, summary judgment was granted dismissing plaintiff's complaint with prejudice. It is from this judgment that plaintiff appeals, contending (a) that the pleadings and the deposition of plaintiff failed to show that there is no genuine issue as to

any material fact; (b) that the defendant is not entitled to judgment of dismissal as a matter of law; and (c) that the court erred in entering its order dismissing plaintiff's complaint with prejudice.

The complaint alleged an oral employment agreement whereby plaintiff's compensation was to be 4% of gross sales made to customers whose accounts were procured by plaintiff; that in accordance therewith plaintiff sold certain steel to Robert E. McKee General Contractor, Inc., between September 1, 1958 and April 4, 1959 for which defendant refused to pay plaintiff a commission of 4% but paid plaintiff for such sales at the rate of only 2%; and that a balance of $8,921.33 is due and owing.

Defendant's answer admitted plaintiff's employment on a commission basis but denied the remaining allegations of the complaint; and, alleged payment in full; accord and satisfaction; that defendant, through its President, procured the contract in question and plaintiff agreed to service the contract for a commission of 2%; that plaintiff made out and submitted his own commission reports on the basis of 2% of gross sales on the contract in question and was paid in full; that by reason of the acts and conduct of plaintiff he is estopped to claim a 4% commission; and that if it should be determined that plaintiff was initially entitled to a 4% commission on gross sales to McKee, by his acts and conduct he voluntarily relinquished and waived his right thereto.

We summarize the facts as disclosed by the pleadings and from the deposition upon which summary judgment was granted. In May, 1955, pursuant to an oral agreement, appellant was employed by the appellee at a basic salary of $200 per month with commissions of 4% on gross sales made by appellant, and with a draw to $500 per month against commissions. The basic salary was increased to $250 per month in December, 1955. Appellant was to receive commissions on gross sales made or negotiated by him, or procured through his efforts, but he did not expect commissions on any sales toward which he had not expended sales efforts. In addition to the sale of fabricated steel items, appellant prepared and submitted bids on large construction jobs and received 4% commissions on the gross sales of jobs awarded to appellee as the low bidder. Appellant outlined the procedure followed by him in procuring sales on these large construction jobs for which he received a 4% commission. This procedure consisted of making the *initial* contact, doing take-offs on plans and specifications, preparing and submitting written bids and quoting the jobs. On this basis, from May, 1955 to September, 1958, appellant dealt with McKee and others, and received his 4% commission on gross sales to them.

In the early part of 1958 some difficulty arose between appellant and the estimators of McKee regarding a particular bid and appellant advised appellee to refuse to bid further on McKee jobs. However, in July or August of that year, Mr. Smith, an officer of appellee, was contacted by McKee directly with regard to obtaining certain fabricated steel for the Ideal Cement Company project because McKee was unable to get delivery of steel, as fast as it was required, from McKee's original supplier. Thereupon, Smith requested appellant to participate in the discussions on this job, which he did, and the contract in question was consummated with McKee.

The initial contact, however, was not made with appellant, nor did he thereafter do any take-offs, make quotations or prepare and submit written estimates, all of this being done by other personnel of appellee. In other words, appellant did not expend any sales efforts toward the procurement of this contract or follow the usual procedure outlined by him for which he had, on previous occasions, received a 4% commission. Appellant's sole participation in the negotiations for the sales contract with McKee was in the discussions relating thereto and, thereafter, in servicing the contract as liaison man, at appellee's request, for a commission of 2% of gross sales thereunder. To this, appellant states, he was "forced to reluctantly agree, under protest,". feeling he was entitled to the customary 4% commission as a result of his continued contacts with McKee. However, appellant submitted his monthly commission reports to appellee wherein he figured his commissions on this job, as liaison man, at 2%, and received payment therefor. In April, 1959, appellant severed his connection with appellee and shortly thereafter brought action against appellee for an additional 2% commission on the McKee contract for the Ideal Cement Company project claiming he was entitled to the same under the terms of the oral agreement.

Appellant's contention in the court below and on appeal is that having originally procured the business of McKee for appellee, he is entitled, under the terms of their oral agreement, to a 4% commission on sales to and contracts with McKee, even though he did not thereafter negotiate the particular sale or contract personally; and his reluctant acceptance, under protest, of a lesser commission on this particular job, did not operate to relinquish or waive his rights to a larger. We do not agree. He alleged in his complaint an oral contract with appellee to compensate him on the basis of a commission of 4% of gross sales on contracts negotiated, bid and procured by him, whereas, by his deposition, it is shown that he did not negotiate, bid or procure the Ideal Cement Company project with McKee. His testimony that this contract was procured under entirely different circumstances than those outlined by him,

for which he had previously received a 4% commission, and his further testimony, that appellee was contacted by McKee because McKee was unable to obtain the desired steel items from his original supplier on terms acceptable to McKee, not only fails to support the allegations contained in his complaint, that he procured the contract and was entitled to the full commission therefor, but obviates any inference or doubt that the contract was procured by appellee through any continued contact of appellant with McKee.

Appellant contends that because of appellee's mere denial that he is entitled to the 4% commission on the contract in question, and its affirmative defense that appellant has been paid in full for his services, a genuine issue of fact exists as to the terms of the oral employment agreement. In support of this contention he relies on Severson v. Fleck, 8 Cir., 251 F.2d 920. This case is not in point. It involved a written contract, the provisions of which the court found to be ambiguous, and, consequently, held that the intent of the parties was an issue of material fact for the jury; whereas, no uncertainty existed as to what was intended by the parties in the present case as is apparent from the record before us.

Appellant's position, therefore, that the terms of the oral agreement present a genuine issue of material fact is without merit. If he did not negotiate, bid or

procure the contract, he is not entitled to a 4% commission on gross sales thereunder. If he is not entitled to the 4% commission, then by servicing the contract, at the request of appellee, for the agreed 2% commission, for which he received payment, it is clear that there are no triable issues of material fact.

In view of the foregoing, it is not necessary for this court to enter into a discussion of other alleged genuine issues of material fact which appellant contends exist as the result of alternative defenses contained in appellee's answer. Having concluded that appellant did not initially procure the contract, issues as to accord and satisfaction, waiver and estoppel are rendered immaterial to a determination of the controversy and require no discussion.

 Under appellant's Point II, he argues that appellee is not entitled to judgment of dismissal as a matter of law. The basis of his contention being that summary judgment was not proper in this case. He cites numerous authorities supporting the well established principle that summary judgment is not proper where there are material issues of fact involved, with which we are in agreement. It is settled law that it is the function of the trial court to resolve all doubts as to the existence of such an issue against the moving party and deny the motion unless the court is convinced, from a consideration of the pleadings,

depositions, admissions and affidavits, that such party is entitled to summary judgment as a matter of law. Agnew v. Libby, 53 N.M. 56, 201 P.2d 775; McLain v. Haley, 53 N.M. 327, 207 P.2d 1013; Michelson v. House, 54 N.M. 197, 218 P.2d 861; Aktiengesellschaft, etc. v. Lawrence Walker Co., 60 N.M. 154, 288 P.2d 691; Zengerle v. Commonwealth Insurance Co. of New York, 60 N.M. 379, 291 P.2d 1099; Pederson v. Lothman, 63 N.M. 364, 320 P.2d 378; Hamilton v. Hughes, 64 N.M. 1, 322 P.2d 335; Bogart v. Hester, 66 N.M. 311, 347 P.2d 327; Ransom v. Haner, Alaska 1961, 362 P.2d 282; and Traylor v. Black, Sivalls & Bryson, 8 Cir., 189 F.2d 213. See also our recent case, Sooner Pipe & Supply Corp. v. Doerrie, N.M., 364 P.2d 138. Tested by the foregoing rule, we conclude that the trial court on the record before him correctly determined that appellee was entitled to summary judgment as a matter of law.

█ It follows from the foregoing that the court did not err in dismissing appellant's complaint with prejudice. Summary judgment is more than a motion to dismiss for failure to state a cause of action upon which relief can be granted. It is by its own terms a final judgment. Pederson v. Lothman, supra. In considering the motion, the court goes beyond the allegations of the complaint and determines whether a claim can in reality be supported on the grounds alleged. In this case, the court quite properly found appellant's claim could not be supported.

█ There is one other matter to be mentioned. Appellant's deposition and brief deal with commissions of 4% which were allegedly arbitrarily reduced by appellee to 2% on sales of raw steel and nuts and bolts sold by appellant to McKee, and for which a monthly report claiming the commission thereon was dated December 1 to December 31, 1958. The appellant's deposition, however, shows that these sales were made prior to September 1, 1958. Since the complaint only relates to commissions on sales of steel to McKee during the period commencing September 1, 1958 to April 4, 1959, any questions relating to commissions on such sales to McKee prior to September 1, 1958 are not in issue in this suit and consequently will not be considered by this court.

The judgment of the court below is affirmed.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

CHAVEZ and MOISE, JJ., not participating.