441 P.2d 506

**Jerry FANCHER, Plaintiff-Appellee,**

**v.**

**Fred HEFLIN, d/b/a Heflin's Seed Company, Defendant-Appellant.**

**No. 122.**

Court of Appeals of New Mexico.

May 3, 1968.

Certiorari Denied May 29, 1968.
See 441 P.2d 57.

Chester A. Hunker, Wesley Quinn, Quinn & Bonem, Clovis, for appellant.

Fred C. Tharp, Esther L. Smith, Clovis, for appellee.

OPINION

ARMIJO, Judge.

Appellee filed his complaint in May, 1966, and replevied sudan seed which he had earlier grown and delivered to appellant's warehouse pursuant to written contract between them. He also sought damages. Appellant answered alleging title in himself and that he was illegally deprived

of the seed, and sought damages by way of counterclaim. This appeal is taken from entry of order granting appellee summary judgment on his complaint. An affidavit, a counter affidavit, as well as depositions were submitted in connection with application for summary judgment.

Appellant contends that there remained disputed issues as to the material fact of right to possession, and thus the trial court erred in granting summary judgment; that from the evidence it could have been found that title had passed to appellant.

Undisputed matters as shown by the record are noted hereafter. The parties entered into written contract April 19, 1965. Pertinent portions read as follows:

"1. GROWER shall grow approximately 145 irrigated acres of (variety) Hybrid Sudan in the crop year of 1965 on land owned or controlled by the GROWER located 2 Miles East and 1 Mile South Hub Tex."

"2. GROWER agrees to sell and DEALER agrees to buy all the marketable seeds produced by the GROWER on the above acres, subject to conditions herein stated."

"4. GROWER agrees to sell all seeds on Clean basis with cleaning to be done with conventional equipment and procedures. Seeds are to germinate 85% percent as determined by a recognized seed laboratory. Seeds must meet standards of Field Inspection for certification."

"6. DEALER shall purchase seeds FOB Clovis. It shall be the responsibility of the Grower for delivery of seed from field to Heflin's Seed Co. Clovis."

"8. In consideration for all marketable seeds delivered, DEALER shall pay the GROWER 4.25 per cwt. Should seeds fail to germinate 85% percent they remain the property of the GROWER."

"9. Conditioned that said seeds meet the standards herein specified, DEALER agrees to pay GROWER the sum above stated on Completion of Analysis Report."

"12. This contract shall be construed in accordance with the laws of the State in which the seeds hereunder are grown and produced."

In the fall of 1965 appellee harvested his seed crop and delivered part to appellant's warehouse where appellant cleaned, treated, sacked and identified it with appellee's name and stored it separate from other grain in the warehouse. A substantial part of the crop was not delivered and remained with appellee. In October, 1965, the seed was tested and found to satisfy contract specifications. No payment was made for the seed, except for a portion later sold to a third party with appellee's consent and he was paid for the particular seed from proceeds derived from its sale. Appellant had been trying to obtain financing with which to pay appellee and others. According to custom, appellee's seed delivered to appellant was evidenced by warehouse receipts issued in the name of appellee and delivered to him. These receipts were to be surrendered or transferred upon payment and without them appellant was unable to obtain financing using the seed as collateral. The complaint was filed following numerous demands for payment and alleged breach of contract for non-payment.

The test to be followed in granting or denying summary judgment is set forth in Ute Park Summer Homes Association v. Maxwell Land Grant Company, 77 N.M. 730, 427 P.2d 249 (1967), as follows:

"A summary judgment is properly granted, if the movant, on the basis of uncontroverted facts, is entitled to a judgment as a matter of law. Morris v. Miller & Smith Mfg. Co., 69 N.M. 238, 365 P.2d 664 (1961); Hubbard v. Mathis, 72 N.M. 270, 383 P.2d 240 (1963). In making the determination of whether or not facts are uncontroverted, and whether or not the uncontroverted facts establish a sufficient basis upon which to predicate a judgment as a matter of law, the pleadings, depositions and other matters pre-

sented and considered by the court must be viewed in the most favorable aspect they will bear in support of the right to a trial on the issues. Gonzales v. Gackle Drilling Co., 70 N.M. 131, 371 P.2d 605 (1962). All reasonable inferences must be construed in favor of the party against whom the summary judgment is sought. Agnew v. Libby, 53 N.M. 56, 201 P.2d 775 (1949)."

We must examine the record of this transaction to see whether there was a genuine issue as to any material fact on which appellee based his right to replevy the seed from appellant. The seed was delivered to appellant pursuant to the contract, and, by its terms, the contract is to be construed under the laws of Texas. We must, therefore, look at the facts in the light of the Texas law to determine whether there is a dispute as to any material fact.

"Replevin is an action to enforce the right to present possession of chattels wrongfully taken or wrongfully withheld, * * *." 50 Tex.Jur.2d, Replevin § 1.

" * * * Ordinarily the right to possession at the time suit is brought is the only matter in controversy and the only question that can be tried and determined therein. Where this right to possession is made to depend on title, the title to be replevied is put in issue, and the better title will prevail." 50 Tex.Jur.2d, Replevin § 11.

It is undisputed that appellee owned the seed immediately prior to its delivery to appellant. Appellant claims that it became his seed when delivered to him. Appellee, on the other hand, bases his right to possession, and thus his right to replevy the seed, on his claim that title to the seed remained in him. By three different tests —(1) the express language of the contract, (2) the practice by which appellant dealt with the seed, and (3) the issuance of warehouse receipts for the seed—we think

appellee retained title, and hence had the right to replevy the goods.

The contract provides that if the seed fails to meet the germination tests, the seed remains the property of appellee. Clearly, there was no sale prior to receipt of the test results. This contract provision contradicts the claim that title passed to appellant upon delivery of the seed.

If the seed meets the specified conditions, the contract provides that appellant will pay for the seed: "on completion of analysis report."

Even though payment was not made, was there a sale upon completion of the analysis report? Citing numerous cases, 50 Tex. Jur.2d, Sales, § 196, states:

"When the contract of sale provides that the goods sold shall be paid for with cash, * * * the sale is on condition that the payment be made, and, until this is done, the title to the goods remains in the vendor, notwithstanding they may have come into the possession of the vendee, unless it appears that they were delivered to the purchaser with intent to waive the condition of payment. This rule is controlling and is based on the view that where by their contract the parties have either expressly or impliedly made payment a condition precedent to the passage of title, delivery is not a consummation of the transaction, and that the sale remains executory until the agreed payment is actually made."

Since the contract expressly negates a sale prior to the seed analysis, and expressly provides for payment upon receipt of the analysis, the sale of the seed was to take place after receipt of the analysis and at the time of payment.

Sale of the seed was on condition that payment be made and title remained in appellee. Appellant having failed to pay for the seed as agreed, appellee could recover possession. 51 Tex.Jur.2d, Sales, § 310.

Appellant also bases his claim of ownership on the undisputed fact that he treated,

cleaned and sacked the seed in bags bearing his trade name. This does not raise a factual issue as to ownership since the treating, cleaning and sacking was done prior to receipt of the analysis report. Until the analysis report was received showing germination of 85%, the seeds remain "the property of the grower."

Appellant's practice, during and after his processing of appellee's seed, was to segregate it from the seed of all other growers in appellant's warehouse. When appellee inquired about the seed, appellant testified: "We just told him which seed was his, where it was stacked and what lot number was stamped on the bags." This practice and this inquiry and answer thereto evidenced an intent on the part of both parties that title had not passed.

■ Finally, appellant issued warehouse receipts in appellee's name covering the seed delivered to appellant by appellee. Appellant admitted in his deposition that in order for him to borrow money on the seed it would have been necessary to have these warehouse receipts cancelled and reissued to him, and then to surrender these reissued receipts to the prospective lender. This also evidences that both appellee and appellant treated the ownership of the seed as remaining in appellee. Warehouse receipts are symbols representative of title, Parma v. First Nat. Bank of Cameron, 63 S.W.2d 692 (Tex.Com.App.1933).

Appellant's second point concerns the award of damages as might have been intended within the purview of the summary judgment. We agree that the judgment awarded no damages and further discussion is unnecessary in view of appellee's concurrence.

The order granting appellee summary judgment on the issue of replevin is affirmed.

It is so ordered.

OMAN and WOOD, JJ., concur.