In re EDGEWATER ROAD IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 13, 1910.)

1. EASEMENTS (§ 17*)—ACQUISITION—CONVEYANCES.
   A sale and purchase of lots abutting on streets as projected on a map creates private easements over the projected streets as between the vendor and the purchaser purchasing with knowledge of the map and in reliance on it, though the map has not been so filed as to become a public record, and a purchaser acquires not only the land lying within the boundaries of the lots, but also an appurtenant right to the use of the land assigned by the map to street purposes.
   [Ed. Note.—For other cases, see Easements, Dec. Dig. § 17.*]

2. VENDOR AND PURCHASER (§ 188*)—CONVERSION (§ 11*)—SALE OF LAND—CONTRACTS—TITLE ACQUIRED.
   A contract for the sale and purchase of real estate vests in the purchaser the equitable title, and the vendor holds the legal title merely as security for the payment of the price, and, on the death of the purchaser before actual delivery of the deed, his interest is treated as real estate
   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 376; Dec. Dig. § 188;* Conversion, Cent. Dig. §§ 19–24; Dec. Dig. § 11.*]

3. EMINENT DOMAIN (§ 85*)—ACQUISITION OF LAND FOR STREETS—DAMAGES.
   An owner of land to be acquired by a city for a street and of all the land on both sides thereof had laid out a street on a map. Pending proceedings to acquire the land for a street, the owner and the city agreed that, if the city would take steps to vest title in it prior to a designated date, the owner would waive interest in any award that might be made for the taking of the property, and would pay assessments levied on every lot owned by him at the time of the agreement, etc. The owner desired to sell his land pending the proceedings, and his object in having an early date fixed for vesting title in the city was that he might so frame his contracts for the sale of the property that the sales would not be completed until after title had vested in the city, so that at the date of the vesting of title the owner would be the owner of record of the street and lots abutting thereon. The city acquired title before the designated date. The owner sold lots with reference to the map disclosing the street, and the contracts of sale fixed a date subsequent to the designated date for the delivery of deeds. Held, that the street was incumbered with private easements, and in estimating the value of the land taken the private easements must be considered, though the purchasers, if the street had not been opened, might have avoided their purchase.
   [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 85.*]
   Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Application by the City of New York for the acquisition of land for Edgewater road. From an order denying a motion to confirm the report of commissioners of estimate and assessment, the City of New York appeals. Reversed, and motion for confirmation of report granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Joel J. Squier, for appellant.
Francis P. O'Connor, for respondent.

SCOTT, J. The question presented by this appeal is whether or not the commissioners of estimate and assessment were justified in valuing the property of the Hunt's Point Realty Company, lying in the bed of Edgewater avenue, and taken in this proceeding as land incumbered with private easements for light, air, and access in favor of adjacent property fronting on the road. The respondent claims that it is entitled to be awarded the full value of the land, as if unincumbered by any easement, and available to its owner for any use whatever. There is no question of dedication to the public, and no such dedication is claimed to have been made.

The sole question is whether the street when taken had been burdened by private easements, for it is manifest that, if so burdened, its value to the owner would be quite different and much less than its value would have been if wholly unincumbered. Matter of 116th Street, 1 App. Div. 436, 37 N. Y. Supp. 508; Matter of the City of New York, Decatur Street, 196 N. Y. 286, 89 N. E. 829. The circumstances under which this question arises are as follows: The Hunt's Point Realty Company owned a tract of land comprising the property to be acquired in this proceeding for Edgewater road, and all the lots on both sides of the road and abutting thereon. The Edgewater road was a street duly laid out on the city map, and proceedings to acquire it were initiated on February 8, 1907, by the adoption by the board of estimate and apportionment of the customary resolution directing the corporation counsel to take the necessary steps. Commissioners of estimate and assessment were appointed on May 27, 1907. While these proceedings were pending, and in contemplation of a proposed sale by the realty company of its property, the said company opened negotiations with the city of New York, which resulted on May 1, 1908, in an agreement that, if the city of New York would take the necessary steps to vest title in the city of New York prior to June 12, 1908, the company would (1) waive interest in any award that might be made for the taking of the property; (2) pay the assessments levied upon each and every lot owned by the company at the time of the agreement, regardless of whether or not the lands were owned by it at the time the assessments became liens; and (3) pay 86⅔ per cent. of the commissioners' fees and of the expenses and disbursements of the pending condemnation proceeding, excepting the amount of the awards made for the taking of lands required to be taken by the city of New York. A bond was to be given by the company to insure the performance of this contract. It is not very apparent how the city of New York gained any advantage from this agreement. It saved interest on the awards from the time of vesting title until the date of this confirmation of the commissioners' report, but the early vesting of title was to be for the benefit of the company. For the rest it was of no consequence to the city who paid the assessments, whether the

realty company or its grantees, and the agreement to pay 86⅔ per cent. of the fees and expenses, excluding the awards, does not appear to be much of a concession, since ordinarily in street opening proceedings 100 per cent. of both the awards and expenses are assessed back upon the benefited property.

The reason for inducing the city to enter into this agreement is frankly conceded by the realty company. It desired to sell its land while the proceedings were pending, but was "familiar with the law of this state to the effect that completed sales of property made by means of a map showing lots as fronting upon proposed streets, one of which was the very street in process of acquirement by the city of New York, would, if said sale was made and the deed given prior to the vesting of title in the city of New York, create private easements in favor of the grantees, which private easements, in turn, would reduce the award to be made for the portion of the property to be acquired for said Edgewater road from a substantial to a nominal amount." The object in having an early date fixed for vesting title in the city was that the company might so frame its contracts for the sale of the property that the sales would not be completed until after title had vested in the city, so that, at the date of vesting of title, the company would be the owner of record of both the street and the lots abutting thereon. In fulfillment of the above mentioned contract, the board of estimate and apportionment adopted the requisite resolution to vest title in the city on June 2, 1907. Up to this time, the realty company had filed no map of its property showing the proposed streets which subdivided it. It had, however, caused such a map to be prepared, and on May 12, 1908, held an auction sale of its property or a part thereof. This sale was advertised and made with reference to a map, which was widely advertised and distributed, and displayed at the sale, upon which the company's property was shown as subdivided by streets, and with the property abutting on said streets laid out in numbered lots. On this map Edgewater road was depicted, and of the lots sold a number were among those shown on the map as fronting on Edgewater road. The terms of sale, which constituted the contract of sale between the company and the purchasers, fixed June 12, 1908, as the date upon which the deeds of the property were to be delivered and possession of the property taken over by the vendees. This was 10 days after title to the property had vested in the city. The respondent contends that, by reason of the foregoing facts, it has avoided the operation of the rule which would have entitled it to only nominal awards if title to the city had vested after title to the abutting lots had passed to the purchasers. In so contending, however, the respondent gives more heed to the letter of the rule than to its reason, and fails to give due weight to the nature and effect of a contract for the sale of real estate. The question we have to consider is as to the rights of the purchasers of lots from the realty company who held contracts of purchase on the day that title to the street passed to the city. One of the commonest and best recognized methods of creating private easements over projected streets is to sell lots abutting thereon by reference to a map showing the streets as projected (Lord

v. Atkins, 138 N. Y. 184, 33 N. E. 1035), and, as between the vendor and the vendee who had purchased with knowledge of such a map and in reliance upon it, it is quite immaterial whether the map has ever been so filed as to have become a public record. When, therefore, the purchasers at the auction sale bought the lots abutting upon Edgewater road, they bought not only the land lying within the boundaries of their lot, but also an appurtenant right to the use of the land depicted on the map as Edgewater road for street purposes, and whatever rights they acquired by their contract of purchase applied as well to the easements in Edgewater road as to the specific lot bought. Hence on the date that title to Edgewater road vested in the city each purchaser of a lot fronting thereon held a contract from the realty company for the conveyance of a private easement over the street, and that contract it could have enforced in equity if the company had retained title to the street, instead of parting with it to the city. It is thoroughly well settled, and will not be disputed, that, in the case of a contract for the purchase and sale of real property, the vendee becomes the equitable owner of the property, the vendor continuing to hold the legal title merely as security for the payment of the purchase money, and hence in the case of the death of such a vendee before actual delivery of the deed the interest of the vendee is treated as real estate and descends to his heirs or is devisable as real estate. In such a case the interest of the parties in the property is charged by the contract of sale. Clark v. Long Island Realty Company, 126 App. Div. 282, 110 N. Y. Supp. 282; Gates v. De La Mare, 142 N. Y. 307, 37 N. E. 121; Williams v. Haddock, 145 N. Y. 144, 39 N. E. 825; Hathaway v. Payne, 34 N. Y. 92; Sewell v. Underhill, 127 App. Div. 92, 111 N. Y. Supp. 85. It is no answer to say that, if the street had not been opened, the purchaser might have avoided his purchase, for he was not bound to do so, but was entitled to a conveyance of what he had bought, to wit, a lot with an appurtenant easement for the use of the street. No injustice is done to the original owner by treating this street as incumbered with private easements for the benefit of the abutting lots; for, as pointed out in Matter of West 177th Street, 135 App. Div. 520, 120 N. Y. Supp. 354, this existence or promised existence of the street is what made the abutting property valuable, and the value of that part of the plot appropriated to street purposes may be presumed to be included in and represented by the enhanced price procured for the abutting lots, because they are sold as abutting upon a street. It is of no moment that the realty company sold the property under an agreement that it would pay the assessment to be levied thereon, for the only effect of such an agreement would be to enhance the amount bid, so that the amount to be paid for assessments would be repaid in the price paid for the property. Our conclusion is that the commissioners committed no error in estimating the value of the land taken on Edgewater road as incumbered with private easement.

The order appealed from must therefore be reversed with $10 costs and disbursements, and the motion for the confirmation of the commissioners' report granted, with $10 costs.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

INGRAHAM, P. J.　I dissent for the reasons stated in the opinion of Houghton, J., in Matter of West 177th St., 135 App. Div. 520, 120 N. Y. Supp. 354.