427 P.2d 249

**UTE PARK SUMMER HOMES ASSOCIA-TION, Incorporated, a corporation, W. F. Leslie, James Goldstein, and L. B. Heath, Plaintiffs-Appellants,**

**v.**

**The MAXWELL LAND GRANT COMPANY, a corporation, Defendant-Appellee.**

**No. 8193.**

Supreme Court of New Mexico.

April 24, 1967.

Rehearing Denied May 19, 1967.

Robert S. Skinner, Raton, for appellants.

Wright & Kastler, Raton, for appellee.

## OPINION

OMAN, Judge, Court of Appeals.

This is an appeal by plaintiffs from a summary judgment entered in favor of defendant and dismissing plaintiffs' complaint.

By their complaint the plaintiffs sought (1) to have defendant enjoined from transferring a tract of land without restraint or restriction upon the use to which it would be put, (2) to obtain a mandatory order directing the development of such lands by defendant, and (3) for a declaratory judgment as to the rights of the parties.

A summary judgment is properly granted, if the movant, on the basis of uncontroverted facts, is entitled to a judgment as a matter of law. Morris v. Miller & Smith Mfg. Co., 69 N.M. 238, 365 P.2d 664 (1961); Hubbard v. Mathis, 72 N.M. 270,

383 P.2d 240 (1963). In making the determination of whether or not facts are uncontroverted, and whether or not the uncontroverted facts establish a sufficient basis upon which to predicate a judgment as a matter of law, the pleadings, depositions and other matters presented and considered by the court must be viewed in the most favorable aspect they will bear in support of the right to a trial on the issues. Gonzales v. Gackle Drilling Co., 70 N.M. 131, 371 P.2d 605 (1962). All reasonable inferences must be construed in favor of the party against whom the summary judgment is sought. Agnew v. Libby, 53 N.M. 56, 201 P.2d 775 (1949).

Even though the basic facts be undisputed, if equally logical but conflicting inferences may be drawn from these facts, and if any of these inferences would preclude a granting of a judgment as a matter of law, then the motion for a summary judgment must be denied. Hewitt-Robins, Inc., etc. v. Lea County Sand & Gravel, Inc., 70 N.M. 144, 371 P.2d 795 (1962). However, after considering the facts in the light of these rules of construction, if the undisputed facts, as a matter of law, will support a judgment in favor of the moving party, then the summary judgment should be granted, even though there may be a dispute in the facts on other immaterial issues. Morris v. Miller & Smith Mfg. Co., supra; Hubbard v. Mathis, supra; Shipman v. Macco Corp., 74 N.M. 174, 392 P.2d 9 (1964).

The facts important to a decision in this case are that the defendant, a Dutch corporation, owned a large area of land in Cimarron Canyon, Colfax County, New Mexico. In 1946, by a written power of attorney, it appointed a Mr. van Lint,

"* * * as its manager and attorney in fact for it and in its name to act generally as the manager and attorney in fact for The Maxwell Land Grant Company in the United States of America in the transaction of all of its business and in the control and management of all its property of every kind or character located within the United States of America; * * *"

Insofar as the management, control, sale and conveyance of real estate, or any right or interest therein, was concerned, the only limitation thereon was that van Lint did not, without special authorization from the board of directors of defendant, have the power or authority to execute ordinary deeds of conveyance and contracts for sale and conveyance.

In 1947 and 1948 he prepared a plat of a tract consisting of approximately 160 acres in Cimarron Canyon at Ute Park. This plat was designated as "The Maxwell Land Grant Company, Ute Park Cabinsite Area." The plat showed the area divided into a large number of lots, showed the lo-

cation of the lot lines and lot numbers, the existing roads and proposed roads, the Cimarron River, and many other objects and places thereon, and, as a part of the platted area, showed an open area of approximately 27 acres which was labeled "Golf Course." Near the one end of this area a small area was marked and labeled, "Clubhouse." Another small area in this same vicinity was labeled "Tennis Courts."

Markers were placed on the ground corresponding with the lot numbers shown on the plat. This plat was never recorded, but copies thereof were distributed and used in connection with the sale of lots. The lots were located by the numbers on the plat and by the corresponding numbers on the markers. The area designated on the plat as "golf course" was referred to by those who showed the lots, on behalf of defendant, to prospective purchasers, as a place where a golf course would be constructed, as a playground, or as a recreation area.

When a purchaser selected a lot by number, a record of such was kept on a copy of the plat, this lot was then surveyed and a deed was prepared describing the property by metes and bounds, without reference to the plat. The deed was forwarded to the kingdom of Holland for execution by defendant. The deed contained certain covenants, reservations and restrictions, but it made no reference to the plat or to any interest in the "golf course."

Some time after the lots had been sold, including the small "clubhouse" area and a small portion of the "golf course" in the vicinity of the "tennis courts," the defendant admittedly undertook to sell the "golf course" area without restriction as to its use. No clubhouse, golf course or tennis courts have been constructed by defendant or by anyone else. No use by the public or by the lot owners has been made of this area for any of the purposes stated on the plat, or in the sales representations.

The plaintiffs, a corporation representing a large number of the lot owners and some individual lot owners, then filed a complaint seeking relief as above stated. The lot owners are either purchasers of lots from the defendant, or are successors in interest of purchasers from defendant.

Assuming the truth of the facts as stated, and indulging all reasonable inferences deducible therefrom, which the trial court was obliged to do in ruling on the motion for summary judgment, the question presented is whether or not some legal right in, or relative to the use of, the "golf course" area, which right is properly enforceable by the plaintiffs, came into existence by the use of the plat and the representations by the defendant's agents in accomplishing the sales of the lots, and which legally enforceable right is still in existence.

We are of the opinion that the stated facts, if found to be true, would support a

right in the lot owners, which is enforceable by plaintiffs, and that the summary judgment was improperly entered.

■ The defendant points out, and correctly so, that plaintiffs at one point appear to rely upon a common law dedication to public use of the "golf course" area and that there has been no public acceptance or user of the premises involved. We do not predicate our decision upon a dedication to public use, but rather upon private rights of the lot owners to have the "golf course" area continue in existence as it was at the time the sales were made upon the basis of the plat and the representations made in relation to the use to which this area would be applied.

We consider our decision in Cree Meadows, Inc. (NSL) v. Palmer, 68 N.M. 479, 362 P.2d 1007 (1961), to be largely determinative of the questions here involved. In that case it is true there was a recording of the plat, and that there was a contention that the "golf course" area in that case was dedicated to the public. However, relative to the dedication and nature of the rights upheld, we stated:

"Although it is contended by defendants that there was some type of dedication, either common law or otherwise, of the golf course, we do not deem it necessary to so decide. The fee of the golf course area is owned by the plaintiff, but plaintiff's use thereof must be subordinated to the extent of the easement in favor of the owners of any of the property in the subdivision. The issue of the right of the public to use the area is not before us and we express no opinion."

Just as in the Cree Meadows case, a reference to the plat in the present case demonstrates that the "golf course" area is obviously "an essential constituent and integral part of the larger enterprise," namely, the Ute Park cabinsite area, which is platted in detail.

Concerning the proper rule to be applied in cases like this, the nature of the rights protected, and the means whereby, or the theories upon which, it is held these rights come into existence, we further stated in the Cree Meadows case:

"* * * The proper rule is that, entirely independent of any public right that may exist by reason of a dedication, private rights to the use of a park are created by implied grant, implied covenant, or estoppel. It makes very little difference upon which of the above theories the holding is based. It is obvious from the record in this cause that the Cree Meadows golf course is a place equivalent to a park or other open area, and the right to have the same continue in existence as it was at the time . * * * [of and after] sales were made is a valuable one and must be protected by the courts. * * *"

As shown by the first quotation above from that case, the right, or easement, is in the owners of any of the property in the subdivision, or cabinsite area as it is denominated in the present case.

In addition to the Cree Meadows case, see the following cases which, though varying in some particulars on their facts from the present case, nevertheless have held, or support the rule, that where land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated. As stated, this is a private right, and it is not dependent on a proper making and recording of a plat for purposes of dedication. Hackert v. Edwards, 22 Conn.Sup. 499, 175 A.2d 381 (1961); Gaither v. Albemarle Hosp. Inc., 235 N.C. 431, 70 S.E.2d 680 (1952); McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953). See also Annot., 7 A.L.R.2d 607, 650, 654 (1949); 2 Thompson, Real Property at 387 (Repl.1961).

The rationale of the rule is that a grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do. It is the use made of the plat in inducing the purchasers, which gives rise to the legally enforceable right in the individual purchasers, and such is not dependent upon a dedication to public use, or upon the filing or recording of the plat. See in addition to the above-cited authorities, Will v. City of Zion, 225 Ill.App. 179 (1922); People v. Reed, 81 Cal. 70, 22 P. 474 (1889); Green v. Miller, 161 N.C. 24, 76 S.E. 505, 507, 44 L.R.A.,N.S., 231 (1912); Fisher v. Beard, 32 Iowa 346 (1869); East Atlanta Land Co. v. Mower, 138 Ga. 380, 75 S.E. 418 (1912); Lord v. Atkins, 138 N.Y. 184, 33 N.E. 1035 (1893); In re Edgewater Road, in City of New York, 138 App.Div. 203, 122 N.Y.S. 931 (1910); Mann v. Bergmann, 203 Ill. 406, 67 N.E. 814 (1903).

The next question presented is the effect of the failure in the deeds to refer to the plat, or to any interest in the "golf course" area. As above stated, the lots were located by the plat and by actual markers placed on the ground, but the descriptions contained in the deeds were by metes and bounds.

We are aware that some cases, such as Brooks-Garrison Hotel Corp. v. Sara Inv. Co., 61 So.2d 913 (Fla.1952), have held that the rule with respect to implied easements —which is generally described as being the nature of the personal right involved—resulting from a conveyance with reference to a map or plat has no application, in the absence of a reference in the deed to the plat which has not been filed or recorded. We

are also aware that many of the cases, although referring to a "sale" according to a plat, do involve a "conveyance" according to a plat.

In Cree Meadows, Inc. v. Palmer, supra, the result was in no way predicated upon a reference in the deeds to the plat of the subdivision. In fact, none of the parties to that suit were purchasers of lots in the subdivision, and only about four of the lots in the subdivision were owned by the defendants. As stated in the opinion in reference to findings of the trial court:

> " * * * The court also found that the defendants had *sold* lots to purchasers in some of the subdivisions by references to the then-existing plat and the restrictive covenants, and that some persons had purchased lots at higher prices than ordinarily would have been paid after having examined the plat, the covenants, and heard the representations of the owners or their agents. * * * " (Emphasis added)

In Putnam v. Dickinson, 142 N.W.2d 111 (N.D.1966), it appears that some lots were sold prior to the time of the recording of the plat showing the "park" area in question, while others were sold subsequent to the recording of a plat which did show the "park" area. In the syllabus by the court it is stated:

> "Where a developer of land advertises and otherwise represents by oral statements, a recorded plat, and maps similar to those contained in the advertisements, that a permanent park designated on such maps and plat is provided for the private use of purchasers of lots, persons who purchase lots in reliance upon such representations acquire an easement that such area shall be used in the manner designated."

In Prescott v. Edwards, 117 Cal. 298, 49 P. 178 (1897), the lots or parcels were staked upon the ground by a surveyor, as was done in the present case, but no plat or map was prepared. The defendant accompanied the prospective purchasers to the lands and there viewed the conditions, as delineated by the stakes. In selling to plaintiff's predecessors, defendant conveyed by metes and bounds, but informed the purchasers that the strips marked upon the ground by stakes were streets. The purchasers would not have purchased the tracts if the representations had not been made by the defendant that these strips of land were streets. In upholding the right of the defendant in these strips of land, the Supreme Court of California stated, in part:

> " * * * In principle, there can be no difference, as to any question of streets, in the legal status of a purchaser who buys a lot according to a plat made by the owner, whereon streets are delineated, and a purchaser who buys as plaintiff's predecessors bought. This land was platted upon the ground. The plat was

as perfect and probably more satisfactory than though pictured upon paper. To be sure, the blocks were not numbered and the streets were not named, as would probably have been the fact if the plat had been transferred to paper. But we do not see that either numbers or names are essential. Again, by the deeds the lands were described by metes and bounds, and no reference is found therein to any street, but at the time of sale the defendant pointed out these strips of land as streets, and the land sold bordered on such strips. The purchaser's condition was thus the same as if the land had been sold by a recorded or unrecorded plat. Under the circumstances we have depicted, it would be a gross injustice for the owner to deprive a purchaser of the privilege of using such strips of land as streets, and an injustice which the law does not countenance. * * *"

In Bradley v. Frazier Park Playgrounds, Inc., 110 Cal.App.2d 436, 242 P.2d 958 (1952), the general subdivision plat, which showed an un-numbered area containing the "commons" and certain artificial lakes which had been excavated, apparently was not recorded. The main question, as stated by the court, was:

"* * * the authority of the trial court to hold that the property owners in the area were entitled to a so-called "equitable easement" to the use of the grounds, clubhouse, and lakes, where no such right

of use or easement was granted by the written conveyance."

The trial court was affirmed. See also Day v. Robison, 131 Cal.App.2d 622, 281 P.2d 13 (1955).

As stated above, it is our view that the right in the individual purchasers, which is generally described as an easement, is not dependent upon a dedication to public use, and is not dependent upon the filing or recording of a plat. We are also of the view that a reference in the deed to a plat, whether recorded or unrecorded, is unnecessary under the facts of this case, wherein plats were prepared and used in making the sales, wherein the cabinsites were actually staked or marked upon the ground in accordance with the plats, and wherein representations were made to the purchasers that the "golf course" area would be used as a golf course, a playground, or a recreation area.

The rule that a contract to convey is merged in the deed, upon its delivery and acceptance as performance of the contract to convey, as set forth in Norment v. Turley, 24 N.M. 526, 174 P. 999 (1918), and Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P.2d 377 (1936), is not applicable in a situation such as this, as evidenced by the above-cited cases. The deeds given by defendant were not given as performance of the implied, if not express, agreement arising from the use of the plat and the representations concerning the use to be made of

the "golf course" area. The right in plaintiffs, as a result of this conduct on the part of defendant, is collateral to and in no way contradicts or varies the covenants, reservations and restrictions contained in the warranty deeds, or the conveyance thereby of the fee simple title in the lots. Putnam v. Dickinson, supra.

We have carefully considered all other matters urged upon us by both the plaintiffs and the defendant in support of their respective positions, but we find it unnecessary to further consider any of these contentions. The summary judgment should be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

It is so ordered.

MOISE, and COMPTON, JJ., concur.