110 F.3d 67
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CRYSTAL LAKES CONDOMINIUM CLUBHOUSE UNITS ASSOCIATION;
Nancy Barbour; Greg Bauska; Robert Bennett; d/b/a Century
Floor Covering; Chris Berg; Pat Casey; Donna Farrier;
Curt Farrier; Katherine S. Gallagher; Phyllis D. Garbutt;
Frank H. Gebhardt; Margaret A. Gebhardt; Leroy A.
Gosselin; Shirley M. Gosselin; Ian Stuart Graham; Charles
Grassechi; Rita Grassechi; Kenneth M. Greentree; Jan R.
Horejsi; Patrick Farrelly; William Kabeary; Raymond
Kleinsasser; Elwood A. Kinsella; John Lence; Tom
MacMillian; Dennis J. Morris; Par Inc.; Nadine Quilling;
Richard F. Smith; Dan Sollom; William R. Welsh; Douglas
L. Purdy; Louise R. Raff; Delano Ryan; Laurena Ryan;
Robert Taylor; Ronald Torstenson; Peter Rossburger; Paul
D. Wachholz, d/b/a Wakewood Land & Tree Co., Whitefish
Credit Union; Don Whitmore; Deloris M. Young; Ethel
Wells; Milodragovich, Dale & Dye, P.C.; David M. Hadly,
Plaintiffs-Appellants,
v.
James E. SMITH; Crystal Lakes Resort, Defendants-Appellees,
and
First Interstate Bank of Kalispell, a Montana Banking
Association; Commonwealth Land Title Insurance
Company, a Pennsylvania Corporation,
Third-party-defendants-Appellees.
CRYSTAL LAKES CONDOMINIUM CLUBHOUSE UNITS ASSOCIATION;
Nancy Barbour; Greg Bauska; Robert Bennett; d/b/a Century
Floor Covering; Chris Berg; Pat Casey; Donna Farrier;
Curt Farrier; Katherine S. Gallagher; Phyllis D. Garbutt;
Frank H. Gebhardt; Margaret A. Gebhardt; Leroy A.
Gosselin; Shirley M. Gosselin; Ian Stuart Graham; Charles
Grassechi; Rita Grassechi; Kenneth M. Greentree; David M.
Hadley; Jan R. Horejsi; Patrick Farrelly; William
Kabeary; Raymond Kleinsasser; Elwood A. Kinsella; John
Lence; Tom MacMillian; Dennis J. Morris; Par Inc.;
Nadine Quilling; Richard F. Smith; Dan Sollom; William R.
Welsh; Douglas L. Purdy; Louise R. Raff; Delano Ryan;
Laurena Ryan; Robert Taylor; Ronald Torstenson; Peter
Rossburger; Paul D. Wachholz, d/b/a Wakewood Land & Tree
Co.; Whitefish Credit Union; Don Whitmore; Delores M.
Young; Ethel Wells; Milodragovich, Dale & Dye, P.C.,
Plaintiffs-Appellees,
v.
James E. SMITH, Defendant-Appellant,
and
Crystal Lakes Resort, Defendant,
and
First Interstate Bank of Kalispell, a Montana Banking
Association, and Commonwealth Land Title Insurance
Company, a Pennsylvania Corporation,
Third-Party Defendants.
 Nos. 95-35431, 95-35486.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided March 31, 1997.
 
 Appeals from the United States District Court for the District of Montana, No. CV-90-00095-CCL; Charles C. Lovell, District Judge, Presiding.
 D.Mont.
 AFFIRMED.
 Before: ALARCN, NORRIS, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Owners of condominiums and lots adjacent to Crystal Lakes Resort sued the owner of the resort for shutting down the resort and maintaining the golf course for his personal use. The plaintiffs claimed that an implied easement, created when the original developers sold the condominiums and lots, gave them a right to pay for access to the resort. The plaintiffs also claimed that the resort owner violated the promises made by the original developers to finish the roads and water and sewer facilities and breached the contract made when he purchased the resort.
 
 ANALYSIS
 
 3
 The property owners claim that the developers created an implied easement when selling the condominiums and lots, which gave the property owners the right to pay for access to the golf course. Smith argues that the property owners, who had to pay the same fees as the general public, at most only had a revocable license.
 
 
 4
 Implied easements are disfavored by Montana courts. See Goeres v. Lindey's, Inc., 619 P.2d 1194, 1197 (Mont.1980) ("any implied negative easements as to a particular lot are to be considered with extreme caution since such an action results in depriving a person of the use of his property by imposing a servitude through mere implication") (emphasis in original).
 
 To find an implied easement:
 
 5
 over the property of another, there must have been a separation of title, and a use before the separation took place which continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained.
 
 
 6
 Graham v. Mack, 699 P.2d 590, 596 (Mont.1984) (citing 2 Thompson on Real Property § 351 (1980 ed.)). At a minimum, assuming the property owners' use could satisfy the first and second requirements, the property owners fail to establish the third requirement, since they can still enjoy the beauty and peace of their property, even without being able to golf.
 
 
 7
 The property owners base their argument upon a line of cases involving a common plan of development. In those cases, courts have found various implied easements created by the representations of developers during the sales process.
 
 
 8
 First, in Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co., 427 P.2d 249 (N.M.1967), owners of lots sued the developer to prevent him from selling an adjacent area without restriction, claiming that he had agreed to develop that land as a golf course. The Supreme Court of New Mexico found that, in connection with the sale of the lots, the developer had distributed copies of a plat showing the location of the lots and an open area labeled "golf course." Id. at 251. Although the plat was never recorded and the deeds to the lots did not refer to the plat or the golf course, the court found that if the developer used the plat and represented that the open area would remain a golf course, playground or recreation area to sell the lots, the lot owners would have a right to enforce that representation. Id. at 252-55. The court reasoned "that where land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated." Id. at 253. Such open areas include streets, squares, courts, and parks. Id.
 
 
 9
 In Shalimar Ass'n v. D.O.C. Enterprises, Ltd., 688 P.2d 682 (Ariz.Ct.App.1984), salesmen for the developer promised to develop, maintain, and operate a golf course in a residential land development for the benefit of the residential lots. Id. at 648. "[W]hen the homeowners acquired their property, sales materials, brochures, maps, and plats were shown and given to them and representations and statements were made to them ... that the golf course would continue to be maintained and used as a golf course" until the year 2000, with an automatic 25 year extension. Id. at 684-85. The lot owners were given free access to the golf course through automatic memberships. The courts found that the homeowners had relied "upon the representations made to them that the use of the golf course was restricted to that purpose for the term of the restrictions." Id. at 685. The court further found that the implied covenant restricting the use of the land was enforceable against subsequent purchasers of the golf course who took ownership with notice of the restriction. Id. at 689.
 
 
 10
 The only Montana case cited by the property owners following these cases' reasoning is Majers v. Shining Mountains, 711 P.2d 1375 (Mont.1986). In Majers, the developers prepared and recorded subdivision plats showing lots and designated common areas and roadways on a ranch. The purchase and sales contracts for the lots specifically referred to the recorded plats. Id. at 1376. The developer did not contest the fact that the lot owners had an easement at the indicated location for the roadways. Id. at 1376-77. Instead, the lot owners sued, claiming an implied covenant that the developer would build the indicated roadways. Id. at 1376. The Montana Supreme Court cited Ute as support for their conclusion that the existence of the plats alone did not create a promise to construct roads, but "[w]hether there is any legally enforceable right to have the roads constructed depends not on the designation in the plats but on the use of those plats in inducing purchases." Id. at 1378. "Factual issues remain of the use made of the plats and what representations were made in the sale of lots." Id.
 
 
 11
 Since implied easements are already disfavored under existing Montana precedent, Goeres v. Lindey's, Inc., 619 P.2d 1194, 1197 (Mont.1980), we do not think Ute Park and Shalimar accurately state Montana law. Majers must be distinguished because it involved a contract claim brought directly against the original developer, while the present case involves an implied easement claim against a successor in interest to the original developer.
 
 
 12
 We affirm the district court's grant of summary judgment for Smith on the grounds that the property owners did not have an easement.
 
 
 13
 The property owners also argue that the district court erred in granting Smith summary judgment on the other grounds. First, the property owners argue that by closing down the resort, Smith breached a third party beneficiary contract embodied in the May 2, 1985 letter. The district court held that the letter was not a binding contract because there was no consideration or reliance.
 
 
 14
 We affirm the district court's grant of summary judgment on counts V through VII based on alternative grounds. First, assuming the letter was a contract, Smith did not breach it. He promised to allow the property owners to play on the golf course "whether it be public or private, at the established greene [sic] fees and or membership fees." The plain meaning of the contract is that the property owners could always golf on the course if it were a public golf course or a private course open for use at established fees. The course became neither. Smith converted it into his own personal golf course, with no "established greens fees or membership fees." A "private" golf course with "established" greens fees or membership fees" is ordinarily open only to members who pay the fees, but is open to them. This course, so far as the record showed, was not open to people who paid established greens fees or membership fees.
 
 
 15
 Second, and alternatively, we agree with the district court that the terms of letter, even if breached, did not give rise to a cause of action for breach of contract, because the letter was not supported by consideration.
 
 
 16
 As to counts II, III, IV, and VIII, we also affirm the district court's grant of summary judgment, because plaintiffs abandoned these claims. The property owners do not support these claims. (See Crystal Lakes Opening Brief at 33-35; Reply Brief at 11-14) All their briefs say is that "[i]t is clear that the District Court committed error in weighing the evidence and holding that the evidence was insufficient to support the above-referenced causes of action." "Issues raised in a brief which are not supported by argument are deemed abandoned." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988). We affirm the district court grant of summary judgment on this issue.
 
 
 17
 Since we affirm the district court's grant of summary judgment for Smith, we do not reach the issue of the district court's grant of summary judgment for Smith's bank and title insurance company.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3