**ERIC W. BLAKE, et al., Appellants**
**v.**
**WILLIAM A. FARRINGTON, Appellee**

D.C. Civ. App. No. 2002-35

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 20, 2006

GWENDOLYN R. WILDS, ESQ., St. Thomas, U.S.V.I., *for Appellant.*

WILLIAM A. FARRINGTON, *Pro se*, Boca Raton, Florida.

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and CABRET, *Presiding Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(July 20, 2006)

This matter is before the Court on the appeal of Eric Blake, Thomas Blake, Carlyle Blake, Altagracia Calistro Padilla, Linda Hill, Isabel Calistro, Clarence Daniel, Felix Castro, Sandra Brown, Elroy Calistro and Enid Calistro [collectively, "Blake" or the "Appellants"], who seek review of an order of the Superior Court of the Virgin Islands[1] dismissing their action for injunctive relief against the appellee, William Farrington ["Farrington"] and requiring that Blake either convey property to Farrington or pay him damages.

---

[1] At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

## I. FACTS AND PROCEDURAL HISTORY

This appeal concerns a dispute over the boundary between parcels of land located in Estate Langmath,[2] and parcels located in Estate Anna's Retreat, on St. Thomas. Estate Anna's Retreat is north of Estate Langmath.[3]

In 1963, Sydney Baptiste, a surveyor on St. Thomas, prepared a map [the "Baptiste map"] of Estate Langmath. The Baptiste map shows the boundary between Estate Langmath and what would become Estate Anna's Retreat as an unbroken fence-line. The Baptiste map does not depict any other estates on St. Thomas.

In 1976, McCloskey and Associates, a surveying firm on St. Thomas, prepared a map [the "McCloskey map"] that included areas of Estate Langmath and Estate Anna's Retreat. This map also shows a continuous fence-line as the boundary between Estate Langmath and Estate Anna's Retreat.

In 1982 Farrington, a landowner on St. Thomas, commissioned the surveyor Louis Harrigan to prepare a subdivision map [the "Harrigan map"] of land in Estate Anna's Retreat. The Harrigan map is labeled "Parcel No. 173 Subdivision", and it sets out the boundaries of Parcels 173C-1 through 173C-21, 173C-63 through 173C-87 and 173C-106 in Estate Anna's Retreat [the "Subdivision"]. On the Harrigan map, some of the parcels in the Subdivision are bounded to the south by an estate road [the "Estate Road"], while others are bounded to the south by a fence-line. The fence-line in the Harrigan map corresponds to the fence-line

---

[2]   This area was previously known as "Lille Norgek," "Little Norge," "Longmath," "Longmat," and "Little Norway."

[3]   To understand this case, some familiarity with the history of land ownership in the Virgin Islands is necessary:

In early Danish times the rural parts of the islands of St. Thomas, St. John and St. Croix were divided into large tracts of land for agricultural purposes called "estates." Each estate was given a distinctive name by which it was known and by which ordinarily it was conveyed and otherwise dealt with. In each island numbers of estates were grouped together in insular geographical subdivisions known as "quarters." Many, if not most, of those estates are no longer intact, having been subdivided and resubdivided over the years into smaller and smaller parcels of land. Nonetheless, the use of the original estate name has been almost universally continued to designate the geographical area which it formerly covered and in which the present subdivided parcels of it are situated.

*Dudley v. Meyers*, 422 F.2d 1389, 1390, 7 V.I. 472 (3d Cir. 1970).

depicted in the Baptiste map. The Harrigan Map does not depict all of Estate Anna's Retreat, nor does it depict any land in Estate Langmath.

In March, 1998, the District Court of the Virgin Islands issued a decision in a partition action [the "Partition Action"] filed by various individuals seeking a determination of the boundaries of Parcels 11-A through 11-J and 11-1 through 11-10 in Estate Langmath. The District Court's order approved a map, Map A9-519-T98, prepared by the surveyor Harry Gauriloff [the "Gauriloff map"] as designating the boundaries of the disputed Estate Langmath parcels. Clerk's deeds were subsequently issued, with land descriptions based on the Gauriloff map. The Appellants received Clerk's Deeds to Parcel Numbers 11-C, 11-1, 11-2 and 11-3 in Estate Langmath. The Guariloff map depicts the Estate Road as the border between the Appellant's property and Estate Anna's Retreat.

In late 1999 or early 2000, Farrington commissioned Louis Olive, a surveyor and engineer, to conduct a survey of an area south of the Estate Road. With the assistance of surveyor Philip Registe ["Registe"], Louis Olive created Map A9-599-T00 [the "Olive map"], which was filed in 2000. The Olive map indicates that a fence-line lying south of the Estate Road comprises the northern boundary of Estate Langmath, rather than the Estate Road that is represented on the Gauriloff map. The Olive map designates the property between the fence-line and the Estate Road as Parcel Numbers 173C-111, 173C-112, 173C-113 and 173C-114 in Estate Anna's Retreat. Farrington claims to own these parcels.

After filing the Olive map, Farrington subdivided and began the process of selling Parcel Numbers 173C-111, 173C-112, 173C-113. Upon learning of Farrington's attempts to sell the disputed property, Blake brought suit against Farrington. Blake first sought a temporary restraining order against Farrington. Following an October 16, 2000, hearing, the Superior Court temporarily restrained Farrington from selling the disputed property. Farrington subsequently filed a counterclaim alleging that he owned the land in question, and seeking damages from Blake based on the lost sales opportunities due to the suit.

On June 26, 2001, the Superior Court conducted a bench trial on the matter of the ownership of Parcel Numbers 173C-111, 173C-112, 173C-113 and 173C-114. In addition to the Gauriloff and Olive maps discussed above, the Superior Court admitted the Baptiste map, the McCloskey

map, the Harrigan map, the Guariloff map, and the Olive map into evidence.

In addition to the maps, the trial court heard testimony from Registe. Registe testified that he had been a land surveyor since 1968. [Trial Tr., 5:19-24, June 6, 2001.] He testified that he conducted field work on both the Harrigan map as well as on the Olive map. [*Id.* at 6:17, 7:15-19, 28:12-18.] Registe stated that the Estate Road runs through Estate Anna's Retreat, and is not its southern boundary. He further testified that the fence-line recorded in the Baptiste, McCloskey, and Gauriloff maps represents the actual southern boundary of Estate Anna's Retreat. [*Id.* at 38:19-23.]

At the conclusion of the bench trial, the Superior Court requested that the parties submit written closing arguments. In its response to Farrington's closing arguments, Blake for the first time raised the argument that Farrington should be equitably estopped from using the Olive map because he had commissioned the Harrigan map.

On November 2, 2001, the Superior Court issued a decision finding that the Olive map illustrated the true boundaries between Blake's property in Estate Langmath and Farrington's Estate Anna's Retreat property. The Superior Court declared that Parcel Numbers 173C-111, 173C-112, 173C-113 and 173C-114, bound by the fence-line depicted in the Olive map, belonged to Farrington. The Court granted Farrington's counterclaim for declaratory judgment regarding the boundaries of his property. It also ordered Blake to either surrender title of the disputed properties to Farrington or to pay Farrington damages based on the appraised value of the disputed property. It did not address Blake's equitable estoppel argument. Blake timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands. *see* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court);[4] Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a.

Findings of fact are reviewed for clear error. *See Poleon v. Gov't of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002). "[A] finding is

---

[4]    Our jurisdiction in this regard was previously provided under 4 V.I.C. § 33.

'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); *see also* FED. R. CIV. P. 52 (a).[5] A trial court's findings are thus upheld if its "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City*, 470 U.S. 564, 573-4, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). Whether the trial court should have applied the legal doctrine of equitable estoppel is reviewed de novo. *See Nibbs v. Roberts*, 31 V.I. 196, 209 (D.V.I. App. Div. 1995) (holding that the proper review for the trial court's application of the law is *de novo*).

## III. ANALYSIS

### A. Appellants' Equitable Estoppel Argument

The Appellants argue that they relied on the Gauriloff map as representing the boundary between their land and Estate Anna's Retreat. They assert that Gauriloff relied on the Harrigan map to set the northern boundary for Estate Langmath. Further, Blake argues, Farrington commissioned the Harrigan map. Because Farrington commissioned the Harrigan map, Blake argues, the Superior Court should have estopped Farrington from relying on the Olive map or any document other than the Harrigan map as representing the boundary of Estate Anna's Retreat.

██ Equitable estoppel, or estoppel in pais, is a doctrine designed to prevent one party from relying to its detriment on the representations of another party. *Bechtel v. Robinson*, 886 F.2d 644, 650 (3d Cir. 1989). For the doctrine to apply here, Farrington must have misrepresented a material fact to Blake with the intent that Blake would rely on that fact to his detriment. *See United States ex rel. K & M Corp. v. A & M Gregos, Inc.*, 607 F.2d 44, 48 (3d Cir. 1979) ("Among the more important requirements of estoppel are that the party to be estopped has misrepresented or wrongfully concealed some material fact and that this party acted with the intention that the asserting party rely to his detriment on his misunderstanding.") (citing cases).

---

[5]  Federal Rule of Civil Procedure 52(a) states:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

■Blake argues that because Farrington commissioned the Harrigan map, that map constituted a representation by Farrington. However, commissioning another to create a map is not in itself a representation for equitable estoppel purposes. Rather, a commissioned map or document constitutes a representation in equitable estoppel where a party uses the document to induce another party to act. *See, e.g., Slagle v. United States*, 809 F. Supp. 704, 710 (D. Minn. 1992) (holding that the United States Corps of Engineers' publication of maps of navigable waters did not constitute affirmative misconduct for equitable estoppel purposes); *cf. In re Tipton*, 18 B.R. 803, 806-10 (Bankr. E.D. Tenn. 1982) (holding that architectural drawings were representations when they were used by the party who commissioned them to induce others to enter into lease agreements in a shopping mall). Farrington merely commissioned Harrigan to draw up a map of Parcel No. 173 in Estate Anna's Retreat. There is absolutely no evidence that Farrington commissioned the Harrigan map to induce Blake to purchase property, construct buildings, or do anything regarding the property depicted on that map. *Cf. Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 77 N.M. 730, 427 P.2d 249 (1967) (upholding the right of land purchasers to force the seller to provide a golf course that was displayed on a map presented the buyers prior to their purchase because the seller used the map to induce the purchasers to buy their properties). Accordingly, Farrington's commissioning of the Harrigan map did not constitute a representation for equitable estoppel purposes. *Cf. Lima v. Farley*, 7 F.2d 40, 41, 4 Ohio Law Abs. 374 (6th Cir. 1923) (holding that a city was equitably estopped from denying the accuracy of blueprints and specifications given to a party who had been contracted to build a sewer for the city).

Moreover, the Harrigan map does not purport to portray the boundaries of Estates Langmath and Estate Anna's Retreat. Instead, it portrays a subdivision, Parcel No. 173, in Estate Anna's Retreat. Thus, even if the Harrigan map was a representation by Farrington, to rely on the Harrigan map for anything more than the boundaries of Parcel No. 173 in Estate Anna's Retreat would be unreasonable. *See, e.g., Slagle*, 809 F. Supp. at 710 (holding that it was unreasonable for a party to rely on maps drafted by the United States Corps of Engineers that "bore the heading 'Waters Covered by Section 10 of the 1899 Rivers and Harbors Act under the Jurisdiction of the St. Paul District, Corps of Engineers.' ... [and the caption that all] 'Other Waters and Wetlands Not Shown on this

Map Should be Considered to Be Covered by Section 404 of the 1972 Act'" to determine whether bodies of water outside the scope of the map were considered navigable).

Accordingly, the doctrine of equitable estoppel was not applicable below, and the trial court's failure to apply the doctrine of equitable estoppel does not present grounds for reversal.

## B. Registe's Testimony

Blake also challenges the trial court's reliance on Registe's testimony. Blake argues that Registe's testimony was not based on generally accepted surveying principles, and lacked probative value.[6]

A trial court's decision to admit opinion evidence is reviewed for abuse of discretion. *United States v. Polishan*, 336 F.3d 234, 241 (3d Cir. 2003). According to Virgin Islands law, a lay witness may give opinion testimony where such testimony is "rationally based on the perception of the witness and [is] helpful to a clear understanding of his testimony or to the determination of the fact in issue." V.I. CODE ANN. tit. 5, § 911(1). Additionally, Virgin Islands law directs that a verdict

> shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless ... (b) the court which passes upon the effect of the error or errors is of opinion that the admitted evidence should have been excluded on the ground stated [in a contemporaneous objection] and probably had a substantial influence in bringing about the verdict or finding.

5 V.I.C. § 774.

█ Registe testified that he had almost forty years of experience as a surveyor at the time of the trial. [Trial Tr. at 5:24.] He testified about his experiences conducting surveys generally, and about his fieldwork on the Harrigan and Olive maps, specifically. Because he testified about his perceptions and about matters that related to the determination of a fact in issue, the Court's admission of Registe's lay testimony did not amount to an abuse of discretion. *See Int'l Rental & Leasing Corp. v. McClean*,

---

[6] The Appellants seem to challenge Registe as an expert witness. However, Farrington offered Registe as a lay witness to testify about the Harrigan and Olive maps, both of which Registe assisted in creating. Accordingly, this Court will examine whether Registe was properly admitted as a lay witness.

303 F. Supp. 2d 573 (D.V.I. App. Div. 2004) (finding that a witness who was licensed in automobile repair, worked as an automobile repairmen, and who had inspected the car at issue was qualified as a lay witness to give an estimate of the cost of repair).

Moreover, whether Registe[']s testimony regarding these topics was reliable was a matter for the trial court to decide, and "assessments of credibility by the trial court are entitled to great deference at the appellate level." *United States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996). The record here shows that Registe had significant experience as a surveyor, and specific knowledge of the surveys about which he testified. Accordingly, "there was at least a minimal indicia of reliability to support the court's reliance" on Registe's testimony, and the trial court did not err in relying on Registe's testimony. *Id.*

Assuming that Registe's testimony was admitted in error, the error is reviewed to determine whether it was harmless. *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). An error is harmless if it "probably had a substantial influence in bringing about the verdict or finding." 5 V.I.C. 774, *see also Glass*, 34 F.3d at 191.

■ Here, the Superior Court relied on the maps presented as evidence as well as on two earlier cases from the United States Court of Appeals for the Third Circuit that indicate that Estate Langmath was bounded by a fence-line rather than a road. [J.A. 24.][7] (citing *Calistro v. Kean*, 389 F.2d 619, 6 V.I. 443 (3d Cir. 1968) and *Calistro v. Kean*, 431 F.2d 57, 7 V.I. 575 (3d Cir. 1970)). Registe's testimony may have assisted the Superior Court to reach its decision, but it is highly probable that the same result would have been reached without Registe's testimony. Accordingly, any error in admitting Registe's testimony was harmless and does not require this Court to reverse the decision below.

## C. Introduction of the McCloskey Map

Finally, the Appellants are simply mistaken in their argument that the Superior Court erred in considering the McCloskey map. While Blake

---

[7]  The appendix submitted by the Appellants is not numbered sequentially. The Superior Court's findings of fact and conclusions of law are the fifth document in the appendix, on what would be page eighteen. However, the parties have labeled the first page of the lower court's opinion as page three, and have retained the page numbers contained in the original document. For uniformity and ease, this Court refers to the page numbers as they would appear had the appendix been sequentially numbered.

did not submit the McCloskey map at trial, the record indicates that the trial court admitted the map as the Defendant's Exhibit 1. [Trial Tr., 16:18-25, 17:1-5.] However, if the admission of the McCloskey map was error, it is reviewed under the harmless error analysis. *Soldiew v. Gov't of the V.I.*, 30 V.I. 112, 117 (D.V.I. App. Div. 1994).

■ The Superior Court relied primarily on the Harrigan map, the two *Calistro* decisions, and the Olive map to reach its decision. Like the earlier Baptiste map, the McCloskey map illustrates that Estate Langmath and Estate Anna's Retreat were bounded by a fence-line rather than an estate road. Even if it was error to admit the McCloskey map, the error was harmless because there is no indication that its admission changed the outcome below.

## V. CONCLUSION

Accordingly, for the reasons articulated above, this Court will affirm the decision of the trial court.